**FIRST STATE BANK OF MANGUM et al. v. LOCK.**

No. 12464—Opinion Filed April 14, 1925.

Rehearing Denied June 30, 1925.

(Syllabus.)

1. **Bills and Notes — Execution—Failure to Deny Under Oath—Note as Evidence.**

Where the plaintiff pleaded the execution of a promissory note and attached a copy of said note as an exhibit to the petition, and the defendants failed to deny the execution of said note under oath, the execution and terms of said note, as pleaded, are thereby admitted, and same was properly admitted in evidence.

**2. Witnesses — Refreshing Memory with Memorandum—Time of Writing.**

The general rule is that a witness will be permitted to testify only to those facts within his personal knowledge and recollection, but he may refresh or aid his memory, if it is at fault, by consulting on the witness stand a memorandum or writing. As to the time when a memorandum used by the witness to refreh his memory must have been made, no inflexible rule has been established, but it is not essential that the memorandum should be made contemporary with the happening of the events or facts to which it relates. It is sufficient that it be made when the facts are fresh in the recollection of the witness.

**3. Banks and Banking—Purchase of Bank Assets—Liability of Purchasing Bank to Creditors.**

Where one bank acquires the principal assets of another bank, under a contract whereby it assumes and agrees to pay specific liabilities of the selling bank, and some of the officers and stockholders of the selling bank become officers and stockholders of the purchasing bank, same does not constitute a merger of the two banks or the pooling of the assets, and the purchasing bank does not become liable to general creditors of the selling bank in the absence of a specific allegation of fraud in the transaction between the two banks.

Error from District Court, Greer County; T. P. Clay, Judge.

Action by O. A. Lock against the First State Bank of Mangum and another. Judgment for plaintiff, and defendants bring error. Modified and affirmed as to First State Bank, and reversed and remanded as to Guarantee State Bank.

H. D. Henry, A. M. Stewart, and S. D. Tant, for plaintiff in error.

M. H. Mills and W. B. Garrett, for defendant in error.

HUNT, J. This action was commenced in the district court of Greer county on June 2, 1916, by O. A. Lock, as plaintiff, against the First State Bank of Mangum, as defendant, to recover $4,234.10 by reason of usurious interest which he alleged the bank had reserved and collected from him in the sum of $2,117.05 for the loan of money from defendant bank in a series of transactions beginning in January, 1911, and ending in March, 1916; said amount sued for being due, as the plaintiff alleged, under the statute of this state providing for the collection of an amount double that of the alleged usurious interest.

On the 24th day of December, 1917, the plaintiff, Lock, filed his second amended petition, in which he made the Guarantee State Bank of Mangum a party defendant. Each of the defendants filed separate demurrers to the plaintiff's petition, which were by the court overruled and exceptions allowed. Thereafter each of the defendants filed a separate answer to the second amended petition of the plaintiff, denying generally the allegations of the petition, and the defendant the First State Bank of Mangum pleaded the statute of limitations.

The case was tried to a jury in January, 1921, which resulted in a verdict in the plaintiff's favor, awarding him $3,555.74. In accordance with the verdict of the jury, the court entered judgment in favor of the plaintiff against both of the defendants. Defendants filed separate motions for new trial, which were overruled by the court and exceptions allowed. The defendants have prosecuted this appeal to reverse the judgment of the trial court. The parties will be referred to as they appeared in the trial court; O. A. Lock as plaintiff, and the banks as defendants.

The first proposition argued by counsel for reversal of the judgment is that the trial court admitted incompetent, irrelevant, immaterial, and secondary evidence offered by the plaintiff in the trial of the cause, and in support of this contention it is insisted that Exhibit "A" was improperly admitted in evidence. This contention is without merit. Exhibit "A" was a note for $3,225 dated January 4, 1911, which the plaintiff had executed to the defendant First State Bank, and which had been paid, and on the date of payment the signature was torn off by the plaintiff. The note was not the basis of the plaintiff's cause of action, but was only evidence of the original transaction that took place between the plaintiff and defendant bank, and which was followed by a series of business transactions by which the plaintiff borrowed various sums of money from the defendant bank and made payments from time to time upon the same until the 22nd day of March, 1916.

The execution, terms, and conditions of the note were pleaded in the petition of the plaintiff, and the answers of the defendants were unverified general denials and insufficient to raise an issue as to the execution and terms of the note. Section 4759, Rev. Laws 1910; section 287, Comp. St. 1921; St Louis & San Francisco Ry. Co. v.

Driggers, 65 Okla. 297, 166 Pac. 703; St. Louis & San Franicisco Ry. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103; St. Louis & San Franicisco Ry. Co. v. Bondies, 64 Okla. 88, 166 Pac. 179.

The rule is well established in this jurisdiction that the allegations in the plaintiff's petition alleging the execution of a written contract therein set out are admitted by the failure of the defendant to deny the execution of such contract under oath, and the admission of the execution of the written instrument, as pleaded, admits such execution with all of its legal effect, and such instrument is therefore entitled to be admitted in evidence.

It is next argued that the trial court committed error in permitting the plaintiff, while testifying as a witness, to refresh his memory from a memorandum he had made of the transaction he had had with the bank in making various payments on the different notes he had executed to the defendant First State Bank, intervening between the 4th day of January, 1911, and March, 1916.

The evidence discloses that the plaintiff made a memorandum of all the different amounts he had paid to the bank during this period of time on his notes, having before him at the time he made the memorandum all his notes, checks, charge slips, and bank statements rendered him by the bank. This memorandum was made by the plaintiff in order that he might refresh his memory and readily give his testimony in a systematic and orderly way as to the numerous transactions he had with the bank. The evidence of the plaintiff was to the effect that his memorandum was correct.

It appears from the record in this case that counsel for the defendants objected to the plaintiff referring to the written memorandum for the reason it was not the best evidence. It is clear from the record that the memorandum was not offered in evidence, but that the witness only used it in refreshing his memory in testifying concerning his business dealings with the defendant bank, of which he had personal knowledge, which were numerous and covered a long period of time. No objection is urged to the memorandum used by the witness to refresh his memory on the ground that same was incorrect. The defendants in the case were in possession of the records which would disclose whether or not the plaintiff's evidence, as to the transactions, that he had with the banks and the amount of money paid, was correct. The defendant rested the case without offering any testimony. We are clearly of the opinion that the trial court commited no error in permitting the witness to refresh his memory from the memorandum which he had made with the notes, checks, and statement of the bank before him.

The general rule is that a witness will be permitted to testify only to those facts within his personal knowledge and recollection, but he is at liberty to refresh or aid his memory, if it is at fault, by consulting on the witness stand a writing or memorandum made by himself or some other person, if after examining it he is able to testify from his own recollection as to the matter in controversy. Underhill on Evidence, page 477; Card v. Foote, 56 Conn. 369.

As to the time when a memorandum used by the witness to refresh his memory must have been made, no inflexible rule has been established; but it is not essential that the memorandum should be made contemporary with the happening of the events or facts to which it relates. It is sufficient that it be made when the facts are fresh in the recollection of the witness. Vol. 11, Enc. of Evidence, 103; Newark Meadows Improvement Company v. J. S. Warden, 219 Fed. 518.

The real question to be determined in this appeal is whether or not the Guarantee State Bank by reason of the assumption by it of the deposit liability of the First State Bank and the acquiring of its principal assets is liable to the plaintiff, Lock, to the extent of his claim, he being a creditor of the First State Bank, as he alleges, at the time the contract between the First State Bank and the Guarantee State Bank was entered into. There is no allegation of fraud as against creditors in the transfer or sale of the assets by the First State Bank to the Guarantee State Bank, but plaintiff contends that the City State Bank of Mangum and the First State Bank of Mangum merged or pooled their resources into one common fund, and reorganized under the name and style of Guarantee State Bank of Mangum, and that said reorganized bank received from the defendant First State Bank large sums of money and bills and notes due and owing the First State Bank and has converted the assets of the defendant First State Bank, and that by reason thereof the defendant Guarantee State Bank has become the successor of the defendant First State Bank and is liable to the plaintiff to the extent of his claim.

It is not contended by plaintiff that there

was in fact a consolidation of the First State Bank and the Guarantee State Bank and that the defendant First State Bank thereafter ceased to exist as a corporate entity, but, on the other hand, he treated it at all times as an existing banking corporation, filed his suit against it separately some six or seven months after the sale or transfer of its assets to the Guarantee State Bank, obtained service on it through its proper officers and contended at all times that he had a right to maintain this suit against the First State Bank and the First State Bank alone, up until December, 1917, about a year and a half after the suit was filed, when by leave of court, he filed an amended petition and made the Guarantee State Bank a party defendant, and from that time on he contended and now contends that he had a right to maintain this suit against both the First State Bank and the Guarantee State Bank.

The essential facts are, as disclosed by the record, that the Guarantee State Bank of Mangum was organized and received its charter from the State Bank Commissioner on November 3, 1915; that prior to that time, on, to wit, October 30, 1915, the First State Bank of Mangum and the City State Bank of Mangum each held separate stockholders' meetings at which each of said banks voted "to liquidate and consolidate and form a new bank," and at the same time the City State Bank named H. D. Henry of Mangum as its liquidating agent and the First State Bank named A. J. Hart of Vinson, Okla., as its liquidating agent. Each of said liquidating agents was authorized and empowered to bring or defend any suits or actions in any courts of this state or other states of the United States, should same be necessary to close the business of said banks. Shortly after receiving its charter on November 3, 1915, the newly organized Guarantee State Bank, as party of the first part, entered into an agreement with the First State Bank and the City State Bank, as parties of the second part, which agreement was introduced in evidence by the plaintiff herein.

Plaintiff seems to base his right to recover from the Guarantee State Bank upon the theory that the way and manner in which it acquired the principal assets of the First State Bank and subsequently handled and disposed of same amounted in law to a conversion, and it therefore became in fact the successor of the defendant First State Bank and liable to him as its creditor.

In Taenzer v. Chicago, etc., R. Co., 170

Fed. 240, 95 C. C. A. 436, wherein it did not appear whether the property was acquired by purchase, lease, or consolidation, the court said:

"No cases are cited and we know of none, which support the proposition that a suit is maintainable at law against a successor corporation, through lease or purchase, for recovery of damages on account of a prior default of the original contracting corporation, without proof either of an express assumption of liability by the successor corporation, or that the possession of the assets of such corporation was obtained by virtue of some relation by which liability for the prior obligations of such corporation is imposed by statute. On the contrary, the authorities are express that neither a lessee nor a purchaser becomes liable for the prior debts or obligations of the lessor or vendor, in the absence of either express contract or statutory provision therefor."

So, in view of this authority, this position is not tenable even if the Guarantee State Bank was in fact the successor of the First State Bank. It therefore becomes necessary to examine this record and review the authorities applicable thereto to determine just what the status of the First State Bank was after the contract with the Guarantee State Bank above referred to was entered into on November 3, 1915, and ascertain whether there was a consolidation, merger or sale. This contract was the culmination of negotiations extending over a period of several months looking to the elimination of one of the state banks in Mangum and having only one state bank there instead of two. This was the result accomplished by the contract hereinbefore referred to. The words "consolidation and sale" are used by the parties in this contract, and, on the other hand, plaintiff refers to the transaction as a merger, or pooling of assets, whereby the First State Bank disappeared and the Guarantee State Bank became liable, not only for the debts specifically assumed by the contract, but for plaintiff's claim as well, at least to the extent of property actually acquired, which was considerably more than plaintiff's claim.

It is well settled that corporations can only consolidate when authorized by law, and then in the manner provided by law. It is conceded that there is no law in this state authorizing the consolidation of corporations, and even though some of the parties to the transaction herein involved used the words "consolidate" or "consolidation," same could have no legal effect. Under the law in this state a corporation can only be extinguish-

ed by the expiration of the term for which its charter was granted or by dissolution in the district court in the manner provided by law.

One of the earliest cases in this state on this subject is Overstreet v. Citizens Bank, 12 Okla. 382, 72 Pac. 379. In this case, the court said, speaking through Chief Justice Burford:

"One corporation may, in contemplation of closing up its business, sell its assets, property and business to another corporation and make arrangements for liquidation of its liabilities, but this does not constitute a consolidation."

It is clear, then, that there was no consolidation in this case; in fact there could not be, under the law in this state; but even if the statute permitted it, the acts of the parties in this case, in our opinion, did not constitute a consolidation, for there can never be a consolidation of a corporation except where all the constituent corporations cease to exist as separate corporations and a new corporation, the consolidated corporation, comes into being. It is not contended that the First State Bank of Mangum ever ceased to exist as a corporation, but so far as this record shows, it merely quit business, disposing of part of its assets and liabilities to the Guarantee State Bank and leaving others in the hands of its duly appointed liquidating agent. Likewise there could be no merger in this case, for a merger of corporations contemplates the absorbing or merging in itself of all the constituent corporations and the surrender by them of their corporate existence. It is true in this case that the First State Bank ceased to do a general banking business and surrendered its rights in that regard to the Guarantee State Bank, but so far as this record shows, its charter was never surrendered or canceled, but for a long time at least, it continued its corporate existence and did business through its liquidating agent. Indeed, the plaintiff in this case, as hereinbefore referred to, recognized its corporate existence, insisting at all times upon his right to maintain this suit against it, in which contention we think he was and is correct.

Counsel for plaintiff refers in his brief to the First State Bank as one of the "disappearing banks" and to the Guarantee State Bank as the "reorganized bank," and "reincarnation of the First State Bank." If the facts and the law warrant this conclusion, we can see no good reason why the First State Bank was made a party to this suit. If the corporation has been extinguish-

ed, it can no longer sue or be sued as such, but its former stockholders may be held liable, upon a proper showing for certain debts or claims existing against it at the time of the dissolution or extinguishment of the corporation.

We therefore conclude that the transaction between the First State Bank and the City State Bank on he one hand and the Guarantee State Bank on the other amounted to a transfer and sale of the principal assets of the two banks to the Guarantee State Bank, and that the consideration therefor on the part of the Guaranee State Bank was the assumption by it of the deposit liabilities of the other banks, which was a good and adequate consideration. It is true, as plaintiff contends, that officers of the First State Bank received stock and became officers in the Guarantee State Bank, and if it were alleged that the transfer and taking over of the property by the Guarantee State Bank was a fraud against creditors, and was done for the purpose of defeating plaintiff's claim, this fact might be a circumstance tending to establish the fraud.

Plaintiff cites and relies upon the cases of Collinsville Nat. Bank v. Esau, 74 Okla. 45, 176 Pac. 516, and McCarthy v. Liberty Nat. Bank, 73 Okla. 275, 175 Pac. 940, as sustaining his contention in this case, but in our opinion, after a careful reading and a thorough analysis of these cases, they are clearly distinguishable from the case at bar. In the McCarthy Case, supra, the Tulsa State Bank surrendered its charter and nationalized under the name of Liberty National Bank and continued business without interruption under the national charter and new name, and there was no question raised as to merger or pooling of assets. The court simply held, and properly so, we think, that the bank could not escape liability by merely changing its name, and that where a state bank is reincorporated as a national bank under a new name, but the personnel, officers, management, and business remain the same, the new bank is liable for usury charged and collected by the old bank.

Also in Collinsville National Bank v. Esau, supra, the officers and stockholders of a state bank organized a national bank and succeeded to the franchise and acquired all of the property and assets of every kind and nature whatsoever from the old bank, and it was alleged in that case "that said merger and transfer was in fraud of the rights of plaintiff." In concluding the opinion, court stated:

"In this case we hold that, according to the facts disclosed by the record, there was no sale of the property and assets from the Farmers' & Merchants' Bank to Collinsville National Bank, but a merger of two corporations, whereby the Collinsville National Bank became possessed of all the property and assets of the Farmers' & Merchants' Bank, and upon such merger the Collinsville National Bank became chargeable with the debts and obligations of the Farmers' & Merchants' Bank to the extent of the property and assets received."

Clearly there was a merger from the facts in this case, the Collinsville National Bank completely absorbing and merging in itself the Farmers' & Merchants' Bank. The corporate existence of the Farmers' & Merchants' Bank was then and there surrendered, and it ceased to exist as a corporate entity; it could not sue or be sued and was not made a party defendant with its successor, the new bank. Not so in the case at bar, where the corporate existence of the alleged disappearing bank is alleged and proved and judgment sought and obtained against it. It may be stated as a general rule that in order to render a purchaser liable for the debts of the selling corporation it must appear, first, that there be an agreement to assume such debts; second, the circumstances surrounding the transaction must warrant the finding that there was a consolidation of the two corporations; third, that the purchasing corporation was a mere continuation of the selling corporation; and fourth, that the transaction was fraudulent in fact. Having concluded that the transaction involved herein amounted to a sale and purchase, and all necessary requisites to hold the purchaser liable for the debts of the seller being absent, it follows that there was no liability on the part of the Guarantee State Bank for the plaintiff's claim against the First State Bank, and the court erred in overruling the demurrer of the Guarantee State Bank to plaintiff's second amended petition.

Counsel for plaintiff in error urge other assignments of error, particularly as to the sufficiency of the evidence to sustain a judgment against the First State Bank. We have examined the record, and find ample evidence therein reasonably tending to support the verdict of the jury as against the First State Bank, and under the oft-repeated holdings of this court, the verdict of the jury will not be disturbed on appeal where there is evidence reasonably tending to support the same.

Plaintiff contends that he was entitled to six per cent. interest on the amount found due from the date the suit was filed, to wit, June 2, 1916. This question was not submitted to the jury, but the court in entering the judgment sustained plaintiff's contention and allowed interest on the judgment from June 2, 1916, at six per cent. per annum. Defendant contends that this being an action to recover a penalty for usurious interest, the statute allowing double the amount of the usurious interest so collected, and therefore an unliquidated demand, interest should run only from date of judgment. No authorities are cited by either side on this proposition, but it is clear that plaintiff's claim was an unliquidated demand, and under the law interest cannot be collected on same until it becomes liquidated and the amount thereof fixed. We are therefore of the opinion that the court erred in allowing interest on the judgment from the date the suit was filed, June 2, 1916, and that the judgment rendered against the First State Bank should be modified to draw interest at six per cent. per annum from January 15, 1921, the date upon which judgment was rendered.

Other questions are raised by counsel in their respective briefs, but entertaining the views as herein expressed of the law as applied to the facts in this case, we deem it unnecessary to pass on them, or to review other assignments of error.

The judgment against defendant First State Bank is therefore affirmed as modified, and as against the defendant Guarantee State Bank the judgment is reversed and remanded, with directions to the district court to render judgment in favor of defendant Guarantee State Bank.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, LESTER, CLARK, and RILEY, JJ., concur. MASON and PHELPS., JJ., absent and not participating.

Note.—See under (1) 31 Cyc. pp. 529, 532. (2) 40 Cyc. pp. 2194, 2451, 2459, 2553; anno. 22 L. R. A. (N. S.) p. 706; 28 R. C. L. p. 504, 595; 3 R. C. L. Supp. p. 1584; 4 R. C. L. Supp. p. 1830; 5 R. C. L. Supp. p. 1547. (3) 7 C. J. p. 491, § 30 (1926 Anno).