EXCHANGE BANK OF COMMERCE et al. v. MEADORS et al.

No. 32117. June 24, 1947.

*184 P. 2d 458.*

A. M. Woodford, of Holdenville, and Busby, Harrell & Trice, of Ada for plaintiffs in error.

Turner & Turner, of Holdenville, for defendants in error.

HURST, C.J. This is an action by Frank Meadors, Jr., and Ray Meadors, d/b/a Meadors & Meadors, against the Exchange Bank of Commerce, a corporation, and the Bank of Commerce, a corporation, and other defendants who do not appeal and whose interests are not involved, to recover the unpaid balance of a promissory note in the principal sum of $6,000. This note was secured by a mortgage covering real property described as the east 40 feet of lots 7 and 8 in block 40 of the town of Wetumka, Oklahoma. From the judgment of the trial court in the sum of $7,712.01, with interest at the rate of 10 per cent from August 3, 1944, and an attorney's fee of $771.20 against defendants and the decree of foreclosure of the mortgage, the two named defendants appeal.

On March 9, 1925, the National Bank of Commerce was the owner of all lots 7 and 8 in block 40 of the town of Wetumka. A two-story building, built some years previously and occupied in part by the bank, covered the west 100 feet of the said two lots. On that day, pursuant to the authorization of the Board of Directors, the National Bank of Commerce conveyed to S. M. Puryear, the president of the bank, the east 40 feet of said lots reciting in the deed the consideration of "One and O.V.C. Dollars". On March 10, 1925, S. M. Puryear and Lois Puryear, his wife, executed the note sued on herein to plaintiffs and secured this note by a mortgage covering the east 40 feet of said lots. This mortgage was filed for record on March 19, 1925.

On March 10, 1925, S. M. Puryear and his wife reconveyed the east 40 feet of said lots to the National Bank of Commerce. This deed was recorded March 13, 1925, prior to the recording of the mortgage but contains in the habendum clause the following provision:

"To Have and to Hold, said described premises unto the said parties of the second part, their heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature Accept a mortgage of $6000.00 payable to Meadors and Meadors, Wetumka, Okla., that the Nat'l Bank of Commerce assumes and agrees to pay."

After the transactions of March 10, 1925, an extension of the bank building or annex was built on the vacant east 40 ft. of lots 7 and 8 of block 40, covered by the mortgage herein. The lower floor of this extension formed a separate store room and the hall of the second floor of the original bank building was extended through the second floor of the annex.

On February 1, 1932, the National Bank of Commerce was succeeded by the Exchange Bank of Commerce and all of the assets of the former were transferred to the latter. On that same date, the National Bank of Commerce

conveyed to the Exchange Bank of Commerce by warranty deed, without exception, lots 7 and 8 of block 40 of the town of Wetumka together with other real property.

On October 14, 1932, the Exchange Bank of Commerce entered into an agreement with the Bank of Commerce whereby the latter bank agreed to assume all the legal liabilities as shown by the books of the Exchange Bank of Commerce at the close of business on that day and to receive therefor the note of the Exchange Bank of Commerce in the amount of liabilities on that day as shown by the books of the bank and secured with all the assets of the Exchange Bank of Commerce. The note sued on herein does not appear as a liability on the books of the Exchange Bank of Commerce on that day.

The trial court found that the plaintiffs are the owners and holders of the mortgage sued on and that it was a valid and subsisting obligation and that the sum of $8,796.50, with interest from August 3, 1944, was due thereon, and that the plaintiffs were entitled to foreclosure of their mortgage lien to enforce collection of the said indebtedness. The court found against the defendants and for the plaintiffs on defendants' offset for rentals except the claims for rentals subsequent to November 23, 1938, to September 4, 1941, at the rate of $30 per month, amounting, including interest, to the sum of $1,084.49, which offset against the amount of $8,796.50 due plaintiffs as above set forth, leaves a net balance due plaintiffs of $7,712.01. The court found against the defendants and for the plaintiffs on defendants' offset claims on the Bunte note. Judgment was entered against the defendants, S. M. Puryear, Lois Puryear, the Exchange Bank of Commerce and the Bank of Commerce, and each of them, in the sum of $7,712.01, together with interest from August 3, 1944, and attorney fees in the sum of $771.20 and costs. Judgment against all the defendants foreclosing the mortgage lien was entered.

1. Defendants urge that the judgment must be reversed for the reason that the findings of fact and conclusions of law entered by the trial court are wholly incomplete and insufficient in form, and do not constitute findings of fact and conclusions of law within the contemplation of 12 O.S. 1941 §611. Defendants excepted generally to the findings of fact and conclusions of law and presented their objection that the findings of fact and conclusions of law are incomplete and insufficient in form in contemplation of the statute in their separate motions for new trial. Timely request for separate findings of fact and conclusions of law was made by defendants.

It is true that the findings of fact and conclusions of law in this cause are not as complete and specific as might be desired. Both parties here are in agreement that the evidence which might be presented at a new trial would not be materially different from that in the present record, and there is no real conflict in the evidence. Therefore, we think that the proper rule to be applied here, where it is clear that the trial court did not refuse to make separate findings of fact and conclusions of law, does not require reversal for a new trial. Where the trial court attempts to make separate findings of fact and conclusions of law upon the request of a party, but fails to make findings on any material issues, or makes findings in too general terms, it is not enough to merely except generally and urge as a ground for a new trial the insufficiency and incompleteness of such findings and conclusions. The party dissatisfied must point to omission to find or the defective finding and request those findings of fact and conclusions of law necessary to protect against error. Unless these requests are timely made the party cannot complain of substantial error. Stone v. Spencer, 79 Okla. 85, 191 P. 197; Harn v. Interstate Building & Loan Co., 77 Okla. 265, 188 P. 343.

2. Defendants propositions 2, 5, 6 and 7 will be considered together. Defendants contend in these propositions that the original transaction is wholly void.

under the provisions of the National Bank Act (5); that the clause in the deed from Puryear to the National Bank for the assumption and payment of the mortgage debt is void and unenforceable (6); that the defense of ultra vires is available to the appellants (7); and that the trial court erred in rendering personal judgment against the appellants for the debt sued on (2).

a. Sections 29 and 375, Title 12 U.S. C.A., so far as pertinent, are as follows:

Section 29:

"A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

"First. Such as shall be necessary for its accommodation in the transaction of its business. . . ."

Section 375:

"Any member bank may sell securities or other property to any of its directors, or to a firm of which any of its directors is a member, in the regular course of business on terms not more favorable to such director or firm than those offered to others, or when such sale is authorized by a majority of the board of directors of a member bank to be evidenced by their affirmative vote or written assent: Provided, however, that nothing in this section contained shall be construed as authorizing member banks to purchase or sell securities or other property which such banks are not otherwise authorized by law to purchase or sell."

There is no evidence in the record that established either that the sale to Puryear was on more favorable terms than those offered to others or that plaintiffs were with full knowledge of any arrangement, if such existed at that time, between Puryear and the National Bank. Therefore, plaintiff will not be prejudiced by the transaction which took place after making the loan and accepting the mortgage of the record title holder.

The purpose of the provisions of Title 12, U.S.C.A. §29, is to prevent speculation in real estate by banks. To permit a bank to deal indiscriminately in real estate as investments, tying up the capital of the bank, might prevent the meeting by the bank of its primary duty to its depositors. Yet transactions which are reasonably necessary to carry on business legitimately under the provisions of the statute are within the power of the bank. In First Presbyterian Church v. National State Bank, 57 N.J.L. 27, 29 Atl. 320, affd. 58 N.J.L. 406, 36 Atl. 1129, it was held that a national bank, under the first provision of section 29, above, may make a contract to prevent the erection of buildings on adjacent land so as to secure light and air for its banking house. It must be recognized that reasonable use of the actual banking premises may under proper circumstances require the bank to deal in adjacent properties so as to derive a benefit or prevent an injury. The test, it seems, is to examine each transaction to determine whether it is an attempt to speculate in real estate or is reasonably necessary in the use and enjoyment of the business premises of the bank. We think the situation here is within the provision of the banking act; that the acquisition of the east 40 feet of the two lots upon which the bank stands, previously owned by the bank, and the building of an extension of the bank building thereon enables the bank to preserve the character of building, occupancy, and business in its immediate neighborhood and receive benefit therefrom and prevent possible injury if this might not be done.

On the other hand, insofar as the National Bank is concerned, we can consider the loan to Puryear actually the loan to the bank. It appears that the conveyance to Puryear is the first step of a series contemplated by the National Bank to finance its annex. In this case it cannot be questioned that the bank can improve the property in the same manner that other prudent owners could do, so as to render it most productive. Brown v. Schleier, 55 C.C.A. 475, 24 S.Ct. 558, 118 Fed. 981; Wingert v. First National Bank of Hagerstown (Md.) 223 U.S. 670, 32 S.Ct. 391.

b. We cannot agree with defendants' contention that the acquisition of the encumbered real estate constitutes a guarantee of the principal and interest of the loan of another contrary to the provisions of 12 U.S.C.A. §92. Whether, under these circumstances, the bank can reacquire encumbered real estate and assume the encumbrance must be answered affirmatively, for the general power to purchase real estate necessarily includes the power to purchase encumbered real estate, and the power to purchase encumbered real estate necessarily includes the power to assume the encumbrance. Woods Investment Co., v. Palmer, 8 Colo. App. 132, 45 P. 237.

Our situation here is unlike those cases cited by defendant of which Joyce v. First National Bank of Snyder, Texas (Tex. Civ. App.) 99 S.W. 2d 1092, is typical, for in those cases the acquisition of the land was clearly outside the provisions of section 29 of the Banking Act. If it is within the power of the National Bank to acquire real estate under the Banking Act, the weight of authority is in favor of the view that it may, as a part of the transaction, assume and agree to pay a mortgage thereon. 91 A.L.R. 182.

c. Since we hold that the transaction of the National Bank was not ultra vires, we need not consider whether the defense of ultra vires is available to appellants as raised in defendants' seventh proposition.

d. Defendants urge under their second proposition that neither the Exchange Bank nor the Bank of Commerce which succeeded it specifically assumed the debt and that the grantee of mortgaged lands conveyed subject to the mortgage does not incur a personal liability for the payment of the mortgage debt. They cite Van Eman v. Mosing, 36 Okla. 555, 129 P. 2, L.R.A. 1917C, 590; Continental Life Ins. Co. v. Phillips, 170 Okla. 34, 38 P. 2d 564. It is clear that the conveyance from the National Bank to the Exchange Bank does not contain a provision whereby the grantee assumed the mortgage debt, neither is there any other contract in the record whereby this was done, but it is equally as clear that the Exchange Bank which took over the business of the National Bank was but the continuation of that bank under a state charter. That the National Bank ceased to exist in 1931 is admitted by defendants in their brief. Personal judgment against the Exchange Bank is proper under the authority of Riegel v. Planters' State Bank, 100 Okla. 42, 227 P. 105.

The personal liability of the Bank of Commerce is another matter. Plaintiffs were given leave to amend their petition to conform to proof after the introduction of the contract between the Exchange Bank and the Bank of Commerce so as to charge, under that contract, the Bank of Commerce with personal liability for all debts of the Exchange Bank. The contract between the banks is not a contract of sale of the assets. It is rather a contract whereby the Bank of Commerce agreed to assume all the liabilities of the Exchange Bank as shown by the books as of the close of business on October 14, 1932, and take the note of the Exchange Bank in the amount of these liabilities. This note was secured by all the assets of the Exchange Bank, which were to be liquidated and the proceeds applied on the note. Even if this contract should be construed to be a contract of sale of all the assets of the bank and the agreement therefore to pay specific liabilities of the Exchange Bank by the Bank of Commerce, not including the note herein sued on, the purchasing bank would not become liable on the note, no fraud being alleged in the transaction between the banks. First State Bank v. Lock, 113 Okla. 30, 237 P. 606.

Nor do we think that the facts disclose either a consolidation, succession or merger of these two banks. Plaintiffs alleged and proved the corporate existence of the Exchange Bank. In the case of either a consolidation, succession or merger of corporations the dis-

appearing corporation or corporations must cease to exist. First State Bank v. Lock, supra; Collinsville National Bank v. Esau, 74 Okla. 45, 176 P. 514. The record in the instant case shows the Exchange Bank merely quit carrying on a banking business, but the record does not show that its charter was surrendered or canceled. On the contrary, the record shows that it continues to do some business through its liquidating committee, and the plaintiffs at all times recognized its corporate existence even as to bringing this suit against that corporation. Record title to the property here in question, at the time of the bringing of this suit, stood in the name of the Exchange Bank of Commerce. Rendering personal judgment against the Bank of Commerce was error.

3. In their third proposition defendants urge that the trial court erred in refusing to allow an offset for rents for the period prior to November 23, 1938. It is contended that the purported agreement is void under the statute of frauds; that there was no valid consideration for the purported agreement; that the purported agreement was void for lack of mutuality; and that the offset of the rents is not barred by limitations.

Defendants pleaded as a matter of set-off the reasonable value of the rental for the use of office rooms by plaintiffs since 1929 until November 23, 1938. The trial court allowed recovery in this connection from this latter date, the date of the filing of defendants' answer, to September 4, 1941, the date of the vacating of the office rooms by plaintiffs, and denied the set-off for that period before the demand for rent was made upon plaintiffs by defendants' answer. The evidence is uncontroverted that plaintiffs moved into the bank building pursuant to the request of the president of the National Bank and under the agreement that no rent should be paid. The evidence is uncontroverted that no rent was ever paid and no request was ever made upon plaintiffs to pay rent. The officials of the Exchange

Bank and the Bank of Commerce admitted they knew no rent was being paid and that the rental books of both banks reflected that no rental was being paid. There is testimony to establish that these officials were advised of the original agreement between the plaintiffs and the National Bank. It is our view that the trial court was correct in denying the set-off of the reasonable rent previous to the abrogation of the agreement which had been ratified by each succeeding owner of the building. It is true that the lease agreement being for an indefinite period is within the statute of frauds.

Defendants also urge that the parol agreement is void for lack of consideration and for lack of mutuality. It is established by the testimony that plaintiffs moved into the bank building and again moved from the first to the second floor at the express request of the owner bank, and that their account was a valuable one for the small town bank. But, regardless of these facts, conceding that the parol lease was void under 15 O. S. 1941 § 136 (5), the owner could have demanded possession of the premises. This was not done. By such a failure to demand possession the owner waived that right; therefore, a tenancy at will existed. Cole v. Bunch, 85 Okla. 38, 204 P. 119; Thompson on Real Property (Perm. Ed.) vol. 3, § 1025, p. 18, § 1033, pp. 31, 32; 27 C. J. 333, Notes 10, 16; 37 C.J.S. 743, 744.

One occupying land without a contract, express or implied, from the owner thereof, is liable to pay reasonable rental value. Mays v. Anderson, 150 Okla. 255, 1 P. 2d 705. But here a contract exists, and although invalid under the statute of frauds because not in writing, it will nevertheless regulate the terms of the tenancy as respects the rent, the amount thereof and time of payment as to the executed portion of the lease. In this case the contract provided for no rent.

4. Defendants contend as their proposition 4 that the court erred in refus-

ing to allow an offset for interest on the "Meadors line" indebtedness. Defendants pleaded payment in their answer. They claimed payment was effected by two claims by way of offset. The first was the claim for reasonable rental previously discussed and the second was a claim for interest on two notes, one for $3,000 of one Bunte, endorsed by Frank Meadors, Jr., and another in the amount of $1,000 made by Frank Meadors, Jr., due on April 9, 1931, when Frank Meadors, Jr., executed his note in the amount of $4,000 payable to the National Bank of Commerce for the purpose of taking up and renewing the $3,000 and $1,000 notes mentioned above, referred to as the "Meadors line." In reply thereto plaintiffs pleaded the making of the $4,000 note as an accord and satisfaction.

The evidence in this connection shows that S. M. Puryear represented the bank in the transaction where the $4,000 note was taken in full satisfaction of the "Frank Meadors, Jr., line" which included the "Bunte" notes. Two "Bunte" notes endorsed by Frank Meadors, Jr., were put in evidence by defendants, but there was a virtual failure of proof by defendants of any personal note of Frank Meadors, Jr., prior to the making of the $4,000 note, but it is admitted by plaintiff that a $500 note existed. But this lessens in importance in view of evidence that establishes that S. M. Puryear represented the bank, his acts were considered by the bank to be the acts of the bank, and it is shown by competent testimony that there was an express agreement to accept the new note of Frank Meadors, Jr., in the amount of $4,000 in full satisfaction of the "Meadors' line," and where such is the intention of the parties it will be given effect. Johnson v. Walters, 59 Okla. 233, 158 P. 914; Martin v. Coogan, 176 Okla. 391, 55 P. 2d 1037; 8 C. J. 572, note 64; 10 C.J.S. 979, note 97; 8 Am. Jur. 448, § 794.

5. The note sued on contains this clause:

"Delinquent interest and the principal after default shall bear interest at 10 per cent per annum, payable semi-annually."

The court, in determining the amount due, allowed interest on the principal and simple interest on the delinquent interest.

Defendants argue that this was error. They urge that the trial court compounded interest and cite authority recognizing the general rule opposed to the allowance of compound interest. In Covington v. Fisher, 22 Okla. 207, 97 P. 615, in a case which arose under the territorial law, this court cited with approval Hovey v. Edmison et al., 3 Dak. 449, 22 N. W. 594, in which the Dakota court considered the same arguments raised by defendants here and established the rule which we followed, that the allowance of simple interest upon the interest due and delinquent on the principal obligation is not compound interest and is legal. We agree that this middle course between simple and compound interest, specifically agreed to in the contract between the parties, should not be nullified by this court and is not unreasonable or inequitable, provided that the rate of interest agreed to that shall be paid upon the delinquent interest is not in excess of the maximum rate allowed by law. See 33 C. J. 179; 47 C.J.S. 10; 30 Am. Jur. 48. Not until the breach of the contract did the rate of interest rise from 6 per cent to 10 per cent per annum.

This middle course between simple and compound interest is not contrary to our statutory definition of compound interest. 25 O. S. 1941 § 27 was adopted from the territory of Dakota and was in force and effect in that territory at the time the opinion in Hovey v. Edmison was promulgated.

Defendants urge that the trial court did not properly credit the offset allowed for rents. We have calculated the judgment and find under the formula approved in Covington v. Fisher and Hovey v. Edmison, supra, the calcula-

tion of the judgment by the trial court was not erroneous nor prejudicial to the defendants.

Reversed and remanded, with directions to enter judgment in accordance with the views herein expressed.

DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.