**Application of the OKLAHOMA TURNPIKE AUTHORITY for the Approval of its Turnpike Revenue Bonds to be Issued Pursuant to a Trust Agreement to Pay the Cost of Section A of the Eastern Turnpike Project.**

No. 40697.

Supreme Court of Oklahoma.

Oct. 22, 1963.

Douglas McKeever of McKeever, Glasser, McKeever & Conrad, Enid, R. L. Vaughan, Oklahoma City, for applicant.

JOHNSON, Justice.

The Oklahoma Turnpike Authority is an agency of the State of Oklahoma created and operating under Sections 651 to 687, inclusive, of Title 69 O.S.1961, and Sections 11-1401 to 11-1405, inclusive, of Title 47 O.S.1961. Such Authority, pursuant to Sec. 668 of Title 69 O.S.1961, has made application to this court for approval by the court of turnpike revenue bonds of the Authority authorized to be issued pursuant to the statutes above cited and the trust agreement duly executed and attached to such application. The approval so sought concerns bonds of such Authority authorized in the principal sum of Thirty-one Million Dollars for the purpose of paying, with other available funds, the cost of a turnpike project, designated in the Trust Agreement as "Section A of the Eastern Turnpike Project" located on that part of the Eastern Route as described in Section 655(e) (4) of 69 O.S.1961, supra. Said bonds consist of Twenty-One Million Dollars designated "Eastern Turnpike, Section A Revenue Bonds, 1963 Series A" and Ten Million Dollars in bonds designated "Eastern Turnpike Section A Revenue Bonds, 1963 Series B," all of said bonds dated July 1, 1963, and maturing, subject to the right of prior redemption as set forth in the Trust Agreement, on July 1, 2003.

■ From an examination of the complete transcript of the proceedings and the notice given in connection with this application, the Court finds that due and legal notice of this application has been duly given as required by law, and that no protests have been filed, nor have any protestants appeared at the hearing before this Court on October 8, 1963. It is therefore adjudged by this court:

■ 1. That the Authority is authorized by Sec. 655(e) (4) of Title 69 O.S. 1961 and Sec. 685 of Title 69 O.S.1961, to construct and operate a turnpike described in the statutes cited as:

"A turnpike, or any part or parts thereof, beginning at the Oklahoma-Texas State Boundary line, and extending North on a route lying East of the Cities and Towns of Wilson, Maysville, Norman and Oklahoma City, and West of the Eastern State Line of Oklahoma to a connection or connections between the Turner Turnpike and the south side of the Arkansas River, * * * in the most feasible and economical route. * * *"

2. That the resolutions adopted September 19, 1963 by the Authority are in proper form and were by all adopted at such meeting.

3. That under such resolutions the engineering report of De Leuw, Cather & Company, dated July 29, 1963, and all of the provisions thereof were duly accepted and approved.

4. That the traffic report dated November, 1962 and supplemental report of July 31, 1963, prepared by Wilbur Smith and Associates, and the estimates therein contained, were duly accepted and approved on September 19, 1963.

5. That the location and route of said Eastern Turnpike Project was at said meeting of September 19, 1963, legally determined and found to be economically sound and have been approved by the Highway Commission of the State of Oklahoma.

6. That at said meeting of September 19, 1963, the Authority found it necessary to finance and construct such turnpike according to the design and engineering report mentioned supra.

7. That said meeting determined it necessary and desirable to authorize and issue the bonds described, supra, in the sum of

Thirty-one Million Dollars, prescribing the terms of such bonds and authorizing the execution of the trust agreement.

8. That at an official meeting of July 29, 1963, resolution authorizing the execution of contract dated August 5, 1963, between the Highway Commission and the Authority was legally authorized.

9. (a) It is further adjudged by this Court that the Thirty-one million in Authority Bonds, when issued in conformity to applicable law and the provisions of the Trust Agreement, shall be valid and binding obligations of the Authority in accordance with their terms.

(b) The Trust Agreement when duly executed by the Authority and Trustee shall be valid and binding.

(c) The provisions of the Trust Agreement for the authorization and issuance of bonds conform to applicable law and are valid.

(d) The official actions and proceedings of the Authority in the location of the Eastern Turnpike Project, the acceptance and approval of the engineering and traffic reports and the estimates therein, the authorization of the construction and financing of Section A of the Eastern Turnpike, the authorization and issuance of Thirty-one Millions in bonds, the Trust Agreement and the authorization and issuance of bonds thereunder are all hereby declared legal and are approved hereby.

In addition to the approval of the Authority bonds sought in this application, the Authority has submitted seven questions which they desire answered in connection with the construction, operation and maintenance of this turnpike project and "feeder" roads. These will be considered in the order submitted.

The question (a) presents for our consideration the legality and validity of a certain contract between the Authority and the Highway Department of the State of Oklahoma providing for the construction of certain highway facilities and state roads by the State Highway Department.

The contract states in effect that the State Highway Department will so perform. Such highway facilities or roads are essential parts of the highway system of the state. Under the agreement made by the Authority, the Highway Department has merely agreed to provide within the time specified facilities which the Department under existing law is authorized to construct, finance, operate and maintain. The fact that it is a feeder road or lead road to the proposed turnpike in no *wise* curtails or lessens the powers of the Highway Department to carry out its functions.

In the body of the opinion in Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 680, we said:

"We construe the terms access roads and lead roads forming turnpike connections to mean those travelways which are essential to completion of the turnpike itself, and which are to be maintained and controlled by the Turnpike Authority. The law provides, 69 O.S.Supp. § 655 (in part):

" 'The Authority is hereby authorized and empowered * * * (e) to construct, maintain, repair and operate turnpike projects and highways, with their access and connecting roads, * * *.'

"The facilities here involved are free to public use. They are not in any manner to be controlled or operated by the Turnpike Authority. If they are not truly such public roads, separate from the Turnpikes, then it would necessarily follow that they would be controlled and operated by the Turnpike Authority, and therefore be a part of the Turnpike itself.

"As supporting our conclusion here we observe that, specifically by law, the Federal Government will not contribute to the construction of any part of a toll Turnpike or facility thereof (23 U.S.C.A. § 301), but each highway facility here proposed to be constructed by the Highway Department is such construction as will have participation

by the Federal Government and of federal funds with federal approval of the project as a proper and useful highway facility, separate from the Turnpike Project.

"In those actions by the Highway Department we observe nothing more than wholesome plans and purposes, within full legal authority, to cooperate in the planning and projecting of proper steps looking towards building an overall substantial and complete highway system for the State.

\*   \*   \*   \*   \*   \*

"We are convinced that the Legislature intended to provide and did provide only that the Turnpikes and those entrances, access roads and lead roads used exclusively by Turnpike patrons should be the facilities to be constructed exclusively by the Turnpike Authority."

The question of the agreement of the Highway Department to build certain highway facilities and the duties and obligations of the State Highway Department to build such highways, as presented here, was considered at length in the former opinion on Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 680, and upon the considerations there stated and upon the conclusions there reached on this same question, we find and hold that there is no illegality or invalidity in the similar contracts involved in this case and the duties and obligations assumed under the agreement are no more than those set forth in 359 P.2d 680, and in the manner there stated we answer this question in the affirmative.

■ The second question posed reads as follows:

"Under Section 715 of the Trust Agreement the Authority covenants and agrees that it will not, directly or indirectly, impair the security of the bonds derived from the revenues of the so-called paid-out projects pursuant to Section 667 of the Enabling Act and in order to provide assurances, in ad-

dition to the Authority's other covenants and agreements, that such revenues of paid-out projects will be available to the extent and as provided by said Section 667 the Authority covenants and agrees in clause (a) of Section 715 that the revenues of the paid-out projects shall not be made available, used or applied for any project other than the turnpike projects described in paragraphs (1), (2), (3) and (4) of clause (e) of Section 655 of the Enabling Act. The turnpike projects described in such paragraphs (1), (2), (3) and (4) are the Turner Turnpike, the Will Rogers Turnpike, the H. E. Bailey Turnpike and the turnpike on the Eastern Route (which may include Section A of the Eastern Turnpike Project and Section B of the Eastern Turnpike) subject, however, to the provisions of Section 685 of the Enabling Act providing that the authorization for the construction of a turnpike project on the Eastern Route or the description of the route or location thereof may be altered or amended by the Oklahoma legislature if bonds have not been sold therefor at the time of such legislative action. The Court is respectfully requested to determine whether the Authority is authorized to covenant and agree as provided in clause (a) of Section 715 of the Trust Agreement and whether such Trust Agreement provision is a valid and enforceable provision."

At the time of the enactment of Section 667 of the Enabling Act, only four turnpikes had been authorized in the State of Oklahoma, which turnpikes are described in paragraphs (1), (2), (3) and (4) of Section 655(e) of the Enabling Act. These are the only ones that had been authorized at the time of its enactment.

We therefore hold that under Section 667 of the Enabling Act that the revenues of paid-out projects are available for the four turnpikes then authorized, and that Section 715(a) of the Trust Agreement

conforms to the language and intent of Section 667 and other provisions of the Enabling Act.

■ The third question posed reads:

"Clause (b) of Section 715 of the Trust Agreement provides that in the maintenance and operation of each paid-out project the Authority, to the extent feasible and appropriate for assuring the availability of the revenues of such paid-out projects as security for the bonds issued under the Trust Agreement and for all other turnpike revenue bonds issued for projects within the purview of clause (a) of Section 715, shall maintain in force and effect and comply with all of the provisions of the trust agreement pertaining to such paid-out projects which relate to the operation and maintenance of such paid-out project and the administration of the revenues thereof as trust funds, but exclusive of such provisions thereof as provide for the issuance of the bonds for the paid-out projects, the expenditure of the proceeds thereof and the payment, redemption, purchase and enforcement of remedies of the bonds issued for such paid-out project, and shall continue the employment of the trustee under such trust agreement. The Court is respectfully requested to determine whether clause (b) of Section 715 of the Trust Agreement is valid and enforceable and whether the Authority is empowered to covenant and agree to carry out such provisions."

The legal effect of Section 715(b) of the Trust Agreement is to incorporate by reference in such agreement the pertinent provisions of the Trust Agreement pertaining to the paid-out project. Sections 660 and 667 of the Enabling Act read as follows:

" * * * Such trust agreement or resolution providing for the issuance of such bonds may contain such provisions for protecting and enforcing the rights and remedies of the bond-holders as may be reasonable and proper and not in violation of law, including covenants setting forth the duties of the Authority in relation to the acquisition of property and the construction, improvement, maintenance, repair, operation and insurance of the Turnpike project in connection with which such bonds shall have been authorized, and the custody, safeguarding and application of all moneys, and provisions for the employment of consulting engineers in connection with the construction or operation of such turnpike project or projects. * * * In addition to the foregoing any such trust agreement may contain such other provisions as the Authority may deem reasonable and proper for the security of the bondholders. * * *

"When all bonds issued under the provisions of this Act and the interest thereon shall have been paid or a sufficient amount for the payment of all such bonds and the interest thereon to the maturity thereof shall have been set aside in trust for the benefit of the bondholders, such projects, if then in good condition and repair to the satisfaction of the State Highway Commission, shall become part of the State Highway System and shall thereafter be maintained by the State Highway Commission free of tolls. Provided, that when all bonds for any Turnpike project and the interest thereon shall have been paid or such provision for payment made, prior to payment of the bonds and interest on any other project or projects, such project shall continue to be operated as a toll facility at toll rates not less than the lowest rate being charged on any project, until all bonds issued by the Authority and the interest thereon shall have been paid or such provisions for payment made. The revenues of such paid-out projects shall be used and applied by the Authority in paying the obligations or depositing in the sinking fund of such

other Turnpike projects in the following order: (a) To any project or projects in default on interest; (b) to any project or projects in default on principal; (c) to any project or projects having insufficient reserves or sinking fund under its trust agreement. If all such other projects have sufficient reserves then the revenues from such paid-out project shall be prorated between such other projects on the basis of the outstanding bonds of each project. If two or more projects fall within any of the above categories, then the revenues shall be prorated between them on the basis of the outstanding bonds of each project."

In order to comply with these sections of the Enabling Act and to protect both the interests of the Authority and that of the bondholders, it is necessary that the Authority shall continue the employment of the trustee under the trust agreement for the paid-out project. This conclusion seems to be the only one consistent with our opinions in Application of Oklahoma Turnpike Authority, Okl., 348 P.2d 510 and Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 680.

It is so held and question (c) is answered in the affirmative.

The fourth question propounded to this court is:

"(d) Under clause (c) of Section 715 of the Trust Agreement the Authority covenants and agrees that, except for turnpike revenue bonds that may be issued pursuant to the trust agreement dated as of July 1, 1961, securing the bonds issued for the H. E. Bailey Turnpike, or the turnpike revenue bonds that may be issued pursuant to and secured by the Trust Agreement dated as of July 1, 1963, the Authority shall not issue any turnpike revenue bonds to pay the cost, in whole or in part, of any turnpike project within the purview of, and legally eligible to receive allocations of revenues of any paid-out project pursuant to Section 667 of the Enabling Act, unless it is determined that the revenues of the turnpike projects that have turnpike revenue bonds outstanding and the revenues of the proposed turnpike project are sufficient to meet certain standards set forth in clause (c) of Section 715. The Court is respectfully requested to determine whether such clause (c) of Section 715 is valid and enforceable and whether the Authority is authorized to covenant and agree to observe the restrictions imposed under such clause (c) and otherwise comply therewith."

The bonds sought to be issued to pay the cost of Section A of the Eastern Turnpike project are secured in part by the allocable part of revenues from paid-out turnpike projects as provided in Section 667 of the Enabling Act. Without the provisions incorporated in Section 715(c) of the Trust Agreement the source of funds from the paid-out projects might be subject to the threat of dilution by the issuance of additional bonds for turnpike projects participating in the revenues of paid-out projects. Nothing which can be said in the Trust Agreement can affect bonds previously issued. Therefore we conclude that the provisions of Section 715(c) come within the authority conferred by Section 660, 69 O.S. 1961, under the following provision therein contained:

"* * * In addition to the foregoing any such trust agreement may contain such other provisions as the Authority may deem reasonable and proper for the security of the bondholders. * * *"

We hold that the provisions of Section 715(c) are reasonable and proper, and the question posed is answered in the affirmative.

Question 5 submitted for answer by this Court reads:

"(e) Under Section 805 of the Trust Agreement it is provided that in the event interest is not paid on any bonds when it is due and payable, interest upon overdue payments of interest at

the same rate of interest payable on such bonds shall be payable, subject to the provisions of the Trust Agreement. The Court is respectfully requested to determine whether the Authority is authorized to agree to pay interest upon overdue payments of interest upon any bonds at the rate of interest borne by such bonds upon which such overdue interest accrues (assuming such rate of interest does not exceed the maximum rate authorized under Section 659 of the Enabling Act) and whether the holders of such bonds may lawfully be entitled to such interest upon overdue interest under the terms of the Trust Agreement."

While this court has heretofore upheld the validity of contractual obligations to pay interest upon overdue interest, (see Exchange Bank of Commerce et al. v. Meadors, 199 Okl. 10, 184 P.2d 458) it has never had occasion to determine the precise point involved here. The Enabling Act is silent upon the matter. There is nothing in any of the statutes or Constitution of Oklahoma forbidding the procedure followed in the Trust Agreement. We are therefore of the opinion that the rule announced in the Exchange Bank case, supra, is also applicable to the obligations of an agency of the State. In the course of this opinion, the court said:

" * * * We agree that this middle course between simple and compound interest, specifically agreed to in the contract between the parties, should not be nullified by this court and is not unreasonable or inequitable, provided that the rate of interest agreed to that shall be paid upon the delinquent interest is not in excess of the maximum rate allowed by law. * * *"

The answer to question (e), the fifth one propounded, is in the affirmative.

■ Next the application submits the following:

"(f) Under Section 654(c) of the Enabling Act the word 'cost' as applied to a turnpike project is defined as embracing, among other things, the following:

" 'Any obligation or expense hereafter incurred by the State Highway Commission with the approval of the Authority for traffic surveys, borings, preparation of plans and specifications, and other engineering services in connection with the construction of a project shall be regarded as a part of the cost of such project and shall be reimbursed to the State out of the proceeds of the Turnpike revenue bonds hereafter authorized; provided, the State Highway Commission shall not incur obligations or expenses totaling more than One Thousand Five Hundred Dollars ($1,500.00) per Turnpike mile.'

"At the request of the Authority and in connection with Section A of the Eastern Turnpike Project the Highway Commission of the State of Oklahoma, with the approval of the Authority, has incurred obligations and expenses in the amount of $254,226.00 for various engineering services mentioned in the above-quoted provision in connection with the financing and construction of Section A of the Eastern Turnpike Project, approximately 40.2 miles in length, and fixing the location of Section B of the Eastern Turnpike for the purpose of Section 209 of the Trust Agreement, and the Highway Commission has requested reimbursement for such obligations and expenses from the Authority. The Court is respectfully requested to determine whether the Authority, in the light of the proviso quoted above, is permitted to reimburse the State Highway Commission for such services out of the proceeds of the $31,000,000 bonds proposed to be initially issued."

As stated in the question posed, Section 654(c) of the Enabling Act contains a specific provision for the reimbursement of the Highway Commission for expenditures made by the Commission with the approval of the Authority for "traffic surveys, bor-

ings, preparation of plans and specifications, and other engineering services in connection with the construction of a project." The validity of such provision has heretofore been upheld by this court in the case of Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795. In the opinion in this case, we said:

"The major portion of subdivision (c) of Sec. 4, 69 O.S.Supp. § 654(c), is employed to detail the various items that go into or to make up the aggregate costs of a turnpike project. The quoted portion merely authorizes as a part of the cost of such a project that any preliminary obligation or expense incurred by the Highway Commission with the approval of the Authority shall be reimbursed as part of the costs of the project. There is no requirement that the Highway Commission shall expend any particular amount, or any amount at all, in that regard. In fact the Act does not specifically authorize any such expenditure at all, but merely makes provision for reimbursement if any such expenditure shall be so made. It is as if the provision had authorized reimbursement of funds so expended in advance by any one.

"The question whether the Highway Commission should so expend any monies is not exactly a proper question for determination in this proceeding, but we discuss it in our desire to consider every contention made by protestants. Of course the Highway Commission has general authority over the State to incur such preliminary expense in reference to highway construction, and when they incur such expense, on any particular line or route, the expenditure is not rendered illegal if that route or line is thereafter taken over by the Turnpike Authority and a toll road constructed thereon. It is only sound business and fair that in such an instance the Turnpike Authority should make reimbursement. In a case

of such preliminary work and expense by the Highway Commission, even though made in possible contemplation of toll road construction by the Authority, if the Authority should fail or decline the line or route for toll road, the line or route might well be utilized as and for a portion of the state system of free roads. Thus it seems clear that any such preliminary work and expense that is generally done, or might be done, by the Highway Commission would be in exact accord with its general duties and would be thoroughly covered by and included in the appropriation of money to the Highway Commission, or for general use by the Highway Commission within the scope of its duties as to the public highways of the state."

We think and hold that the expenditure made by the Highway Commission is clearly within the meaning of the statutes quoted, and that reimbursement from the bond funds should be made. To hold otherwise would in all probability hinder future efforts to construct additional projects, since the Authority has no funds for undertaking surveys of this kind.

The above question is answered in the affirmative.

■ The seventh and last question submitted by the Authority reads:

"(g) Section 404 of the Trust Agreement provides that the Trustee shall set aside from the proceeds of the bonds issued to pay the cost of Section A of the Eastern Turnpike Project and credit to a separate interest account in the Construction Fund, as defined in the Trust Agreement, an amount equal to the sum of the accrued interest received upon the delivery of said bonds and the interest to accrue on said bonds for a period of four and one-half ($4\frac{1}{2}$) years from the date of the delivery of said bonds, such period being the estimated period of construction and one year thereafter. Section 654(c) of the Enabling Act provides that the cost

of a turnpike project shall embrace, among other things, 'interest prior to and during construction, and for one year after completion of construction.' The Court is respectfully requested to determine whether Section 404 of the Trust Agreement is a valid and binding provision conforming to the provisions of the Enabling Act and whether the Authority is authorized to agree to such provision in the Trust Agreement."

The validity of Section 654(c), Title 69 O.S.1961, has been upheld by this court in Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795.

The estimated time of construction for this particular project as shown by the engineers' estimate is three and a half years. The Trust Agreement in said Section 404 thereof provides for the setting aside from the proceeds of the bonds in the separate interest account the accrued interest upon the bonds sold and interest to accrue upon such bonds for a period of four and a half years from date of delivery of bonds. This period of time covers the estimated time of construction plus one year, as approved by such Section 654(c), supra.

We hold the engineers' estimate of construction time is the best source available upon which to determine the time of construction, and that Section 404 of the Trust Agreement therefore conforms to the provisions of Section 654(c) of the Enabling Act.

The seventh question is answered in the affirmative.

■ Having fully heard and considered this matter upon the pleadings and brief of applicant and its oral presentation of counsel, the Court finds that the Turnpike Authority proceeded in all things pertaining to the bond issues here involved within its legal authority and in conformity to applicable law; that the several questions proposed should be and they are hereby answered and determined as above set out in this opinion; that all of the Turnpike Bonds here involved have been properly authorized in conformity to applicable law, and that when issued in accordance with such proceedings of the Oklahoma Turnpike Authority will constitute valid obligations in accordance with their terms, and therefore the court by this opinion hereby approves the bond issues here presented as this court is authorized to do by specific provision of law.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON and JACKSON, JJ., concur.

BERRY, J., concurs specially.

WILLIAMS and IRWIN, JJ., concur in part and dissent in part.

BERRY, Justice (concurring specially).

I feel the majority opinion, in answer to Question (e), the fifth one propounded, is vague in that it fails to state what the maximum interest rate allowed by law is.

The statute, 69 O.S.1961 § 659, provides in part:

"The bonds of each issue * * *, shall bear interest at such rate * * * not exceeding five percentum (5%) per annum * * *.

" * * * No such sale shall be made at a price so low as to require the payment of interest on the money received therefor at more than five (5%) per centum per annum computed with relation to the absolute maturity of the bonds * * *."

I can only see from this section an aggregate maximum rate of 5% interest per annum calculated on the absolute maturity of the bonds. In my opinion this 5% interest limitation includes the provision for payment of interest upon interest as provided in the trust agreement.

For the reason herein stated, I concur specially.

IRWIN, Justice (concurring in part, dissenting in part).

The case of Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 68,

involved a proceeding in the nature of an original action for approval of the issuance of revenue bonds by the Turnpike Authority to finance the construction of the Southwestern and Eastern Turnpikes. In my opinion that case is dispositive of all the issues in the instant action, except the issue relating to interest upon overdue payments of interest, and the principles of law enunciated in that case are controlling in the instant action. However, in my opinion, the Enabling Act does not empower the Turnpike Authority to agree to pay interest upon overdue payments of interest, and I respectfully dissent to that part of the opinion promulgated by a majority of my associates.

This is the first case involving the issuance of Oklahoma Turnpike Authority revenue bonds wherein the trust agreement contains a provision that in the event interest is not paid on any bonds when it is due and payable, interest upon overdue payments of interest shall be payable under the provisions of the trust agreement. In my opinion, the Enabling Act does not empower the Turnpike Authority to enter into a trust agreement which contains such provision.

The Oklahoma Turnpike Authority is a species of State instrumentality. Certain powers are granted to the Turnpike Authority but its powers are limited to those powers granted. See Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795. Therefore, if our Enabling Act does not authorize the Turnpike Authority to enter into a trust agreement which provides for payment of interest upon overdue payments of interest, then the Turnpike Authority does not have the power or the authority to enter into such agreement. Its authority to enter into such an agreement can not be implied.

Title 69 O.S.1961 § 659, inter alia, specifically provides:

" * * * The principal of and the interest on said bonds shall be payable solely from the funds herein provided for such payment. The bonds of each issue shall be dated, shall bear inter-est at such rate or rates not exceeding five per centum (5%) per annum, * * *. The Authority shall determine the form of the bonds, including any interest coupons to be attached thereto, and shall fix the denomination or denominations of the bonds and the place or places of payment of principal and interest, which may be at any bank or trust company within or without the State. * * * The Authority may sell such bonds in such amounts and in such manner, either at public or private sale, and for such price as it may determine to be for the best interest of the State, but no such sale shall be made at a price so low as to require the payment of interest on the money received therefor at more than five (5%) per centum per annum computed with relation to the absolute maturity of the bonds in accordance with the standard tables of bond values, excluding, however, from such computation the amount of any premium to be paid on the redemption of any bonds prior to maturity."

Title 69 O.S.1961 § 669, provides for the issuance of turnpike revenue refunding bonds for the purpose of refunding any bonds then outstanding, "including the payment of any redemption premium thereon and any interest accrued or to accrue to the date of redemption of such bonds".

An examination of the Enabling Act discloses there is no language whatsoever, which has reference to interest upon overdue payments of interest or interest on any accrued interest in the event refunding bonds are issued. As stated in the majority opinion, "The Enabling Act is silent upon the matter". Since the powers of the Turnpike Authority are limited to those powers granted, and the Enabling Act does not grant the Turnpike Authority the power or the authority to enter into an agreement wherein interest upon overdue payments of interest shall be payable, in my opinion, this Court should not approve this provision of the Trust Agreement. I there-

fore respectfully dissent to that portion of the opinion promulgated by a majority of my associates.

I am authorized to state that Mr. Justice WILLIAMS concurs in the views herein expressed.