1999 OK 24

COMMUNITY BANKERS ASSOCIATION OF Oklahoma, and Peoples National Bank, Checotah, Oklahoma, Protestants/Appellants,

v.

The OKLAHOMA STATE BANKING BOARD, Armstrong Bancshares, Inc., and Armstrong Bank, Vian, Oklahoma, Applicants/Appellees.

No. 91,465.

Supreme Court of Oklahoma.

March 30, 1999.

Larry Derryberry, Stephen G. Solomon, Gary L. Levine, Derryberry, Quigley, Solo-

mon & Naifeh, Oklahoma City, Oklahoma, Charles A. Gall, Chet A. Fenimore, Jenkens & Gilchrist, Dallas, Texas, For Protestants.

Donald A. Pape, Melvin R. McVay, Jr., O. Dudley Gilbert, Phillips, McFall, McCaffrey, McVay & Murrah, P.C., Oklahoma City, Oklahoma, For Armstrong Bancshares, Inc. and Armstrong Bank.

Michael C. Turpen, Robert A. Mildren, Robert A. Nance, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Oklahoma City, Oklahoma, For Oklahoma State Banking Board.

SIMMS, J:

¶1 In this appeal, Peoples National Bank of Checotah and the Community Bankers Association of Oklahoma seek our reversal of an Order of the Banking Board allowing Armstrong State Bank of Vian to establish a branch in Checotah through the vehicle of merging with an interim state bank organized and chartered by its holding company, Armstrong Bancshares, under the provisions of 6 O.S.Supp.1997, § 502(H). The issue before us today is whether that subsection allows a bank holding company to avoid the statutory restrictions on branch banking. We hold it does not and reverse the Order of the Banking Board.

¶2 The statute at issue, 6 O.S.Supp.1997, § 502(H) provides:

"Interim charters. A bank holding company or a multibank holding company may apply for and obtain an interim charter to organize an interim state bank for the purpose of facilitating the creation of a bank holding company, or acquiring or merging with an existing bank in accordance with the provisions of Section 502.1 of this title or the laws of the United States."

¶3 Interim banks, sometimes called "phantom banks" are shell corporations. They are not unique to Oklahoma banking law. Their use as a vehicle in merger and acquisition transactions for corporate reorganizations is well known for achieving business purposes such as assuring 100% ownership and control of corporations, forming bank holding companies, freezing out minority interest shareholders and qualifying for tax advantages.[1]

I.

¶4 The facts of this matter are simple and undisputed. Peoples National Bank is a banking corporation duly organized under the laws of the United States and its main office is in Checotah, Oklahoma. Checotah is therefore a "banked" municipality. Community Bankers Association of Oklahoma is a non-profit corporation representing 110 state and national banks throughout the state which would be negatively affected by the Board's order. Both entities are "interested persons" under the statutes.

¶5 Armstrong Bancshares is an Oklahoma corporation and registered bank holding company under the Bank Holding Company Act of 1956 (12 U.S.C. §§ 1841, et seq.) with its principal office in Vian, Oklahoma. Armstrong Bank is a wholly owned subsidiary of Armstrong Bancshares and its main office is also in Vian. Vian is located in Sequoyah County and is approximately 40 miles from Checotah which is in McIntosh County.

¶6 In March, 1998, Armstrong Bancshares and Armstrong Bank (collectively Armstrongs) submitted a series of Applications to the Banking Department pursuant to 6 O.S. Supp.1997, § 502(H).[2] This was the first application under § 502(H) the Department had received in the 15 years the subsection had been in existence. Armstrong Bancshares first sought authority to establish and charter an interim state bank which would be wholly owned by Armstrong Bancshares and would to be known as the Checotah Interim Bank. Armstrong Bancshares also sought approval for a merger Agreement entered into by Armstrong Bancshares,

---

1. See e.g., *PSB State Bank v. Comerica, Inc.*, 151 Mich.App. 452, 391 N.W.2d 371 (1986)(triangular merger); *Martin v. Kilgore First Bancorp, Inc.*, 747 F.2d 1024 (5th Cir.1984)(reverse triangular merger); *NoDak Bancorporation v. Clarke*, 998 F.2d 1416 (8th Cir.1993)(freeze out merger).

2. All subsequent statutory references are to the Banking Code, 6 O.S.Supp.1997, §§ 101, et seq.

Checotah Interim Bank and Armstrong Bank to immediately merge the proposed Checotah Interim Bank with Armstrong Bank. Armstrong Bancshares was the sole shareholder of both entities and alleged that the banks would have a common directorate and capitalization. Under the terms of the Agreement, the separate existence of Checotah Interim would cease when it was merged "with and into" Armstrong bank; Armstrong would be the "surviving bank," its existence, rights, powers, etc. would be unaffected by the merger and the "office of Checotah shall become a branch of Armstrong". Each existing share of Checotah stock would be converted into the right to receive one share of Armstrong Common Stock, the assets of Checotah were to pass to Armstrong Bank and it would be responsible for Checotah's debts existing at the time of merger.

¶ 7 Armstrong Bank filed an Application with the Department for a Certificate to convert the proposed Checotah Interim Bank into a branch of Armstrong Bank. Under the terms of that Application, the proposed branch would result from acquisition, it would be located in Checotah and called "Armstrong Bank, Checotah Branch."

¶ 8 A hearing on the Applications was held before the Board. In opposition, Peoples Bank and the Association argued that § 502(H) does not allow branching and that the branch sought by Armstrongs is violative of the provisions of the branching statutes. Following the submission of evidence, stipulations of fact and arguments of counsel for the parties, the Board granted the series of Applications, allowing the chartering and organization of the interim bank, its merger with Armstrong Bank *and* the establishment of the resulting bank from the merger as a branch of Armstrong Bank located in Checotah. The Board issued the following Conclusions of Law which are relevant here:

"1. The Commissioner and the Banking Board have jurisdiction over these matters pursuant to §§ 502(H), 502.1, 1103 and 501.1 of the Code. The requirements of the applicable Code provisions have been met.

2. The chartering of the Interim Bank by a bank holding company and merger of the interim bank with an existing bank subsid-

iary of the bank holding company is authorized by §§ 502(H), 502.1 and 1103 of the Code, as a bank for the purpose of merging with an existing bank, and there has been shown compliance with the requirements and restrictions of these provisions.

. . . .

8. The Applications for Interim Charter, merger and Branch by acquisition were properly accepted for filing and the Application fulfills the requirements for applications and complies with §§ 502.1, 1103 and 501.1 of the Code.

. . . .

10. The Application should be approved as submitted. The transactions described in the Application are permitted under Oklahoma law.

11. All statutory criteria for chartering a state bank were met by the Application and all factors considered by the Commissioner and Board in accordance with § 309(C) of the Code have been favorably fulfilled by the Applicant.

. . . .

13. The proposed merger of the Interim bank with and into Armstrong Bank constitutes a valid merger transaction and a valid branch by acquisition of the Interim bank by Armstrong Bank, and as such, the proposed branch is a branch by acquisition pursuant to § 501.1(C) and (E), and not a de novo branch pursuant to § 501.1(A).

14. The proposed branch is not an unlawful de novo branch application by Armstrong Bancshares on behalf of Armstrong Bank.

15. The interim bank does not have to be open to the public for one business day before being acquired and converted to a branch as required by Banking Board Rule 85:1–1–2 defining "established" for purposes of § 501.1(C), since the rule only applies to acquisitions of branches, not banks, and this case involves an acquisition of a bank.

16. Approval of the application does not permit circumvention of the branching restrictions of the Banking code and do not create unlimited branching rights for banks. The interim bank merger branch

transaction is an authorized transaction by a holding company and a bank."

¶ 9  Peoples Bank and the Association do not challenge the right of Armstrong Bancshares to organize and charter an interim bank and then merge it with its subsidiary, Armstrong Bank, in order to reorganize its corporate structure as it wishes. They argue only that the end product of the § 502.H merger, the surviving bank, cannot lawfully be established as a branch bank located in Checotah. They point out here, as they did before the Board, that the subject of branching is not even addressed in § 502(H), and they argue that the Order is in direct violation of branching prohibitions of the controlling statutes. Peoples Bank and the Association are correct.

## II

¶ 10  Branch banking[3] is permitted only where expressly authorized by statute and without explicit authority, branching is prohibited. Our branching provisions are restrictive and were meant to be so. Pursuant to the provisions of § 402(12) a bank is not permitted to exercise "by its directors, duly authorized officers or agents any powers to establish and operate branches except to the extent expressly permitted in §§ 501 through 506 ..." Oklahoma has traditionally been a "unit bank" state. From statehood until 1983, branch banking and multibank holding companies were entirely prohibited. Banks were limited to conducting business in a single facility which served the local community and local ownership was encouraged. In 1983, following the banking crisis of the time, the Legislature enacted a comprehensive statutory scheme which granted limited branching ability in expressly authorized circumstances.[4]

¶ 11  Two forms of branching are recognized. Where permitted, branching may be accomplished by a bank (1) *establishing* a new, or *de novo,* branch or (2) *acquiring* an existing bank through purchase. With exceptions not relevant here, a bank is limited by geographic and numerical restrictions in *establishing* a *de novo* branch. § 501.1(A) provides:

"1. Any bank may establish and perform any banking function at no more than two branch banks on property owned or leased by the bank as follows:

a. Located within the corporate city limits where the main bank is located, or

b. Located within twenty-five (25) miles of the main bank if located in a city or town which has no state or national bank located in the city or town; provided however, if an application for a bank charter has been filed, the Board shall give priority to the charter application."

¶ 12  A bank may *acquire* an unlimited number of existing banks to operate as branches without restriction as to location. Section 501.1(C) provides:

"Authorization to branch by acquisition.

1. Subject to the [deposit] limitations in subsection D of this section, any bank may acquire an operate as branch banks at which any banking function may be performed an unlimited number of banks or savings associations or branch banks or savings association branches without restriction on location. Any such acquisition of a bank or savings association may include all of the assets and liabilities of the bank or savings association and all branches and facilities thereof which have been established prior to the date of the acquisition as determined by the Board or the Comptroller of the Currency."

¶ 13  We agree with Peoples Bank and the Association that regardless of the efforts by the Board and Armstrongs to portray this Checotah branch as an acquisition, it is being established as a de novo branch. The branch cannot be "acquired" as there is no "existing bank" to acquire. It is a new bank. Appellants submit it was the impossibility of having a lawful de novo branch in Checotah which led Armstrong Bancshares

---

3. A branch bank is defined by Sec. 102(5) as "any place of business separated from the main office of a bank at which deposits are received, or checks paid or money lent."

4. H.B. No. 1123, 1983 Okla.Sess.Laws, ch. 221, amending 6 O.S.1981, Section 501.

to create and propose this sham transaction so it could accomplish indirectly what it was forbidden to do directly. Appellants correctly contend that neither § 502(H) nor any other provision authorizes the Board's Order and, in fact, the Banking Code specifically prohibits the result achieved by the Order: a new branch bank established more than 25 miles from its main office in a town which already has a bank.

¶ 14 Appellants also point out that the Board's action eliminates all restrictions on the expansion of branching in Oklahoma which the Legislature has imposed and by proceeding under this § 502(H) merger procedure as the Armstrongs did, bank holding companies will have no numerical or geographic limits on the branches which they establish. Appellants maintain that the Board has created a policy which will allow all bank holding companies to form sham paper mergers with their subsidiaries and replicate themselves at will into branches in any locations they choose.

¶ 15 Armstrongs readily concede that if it were not for the § 502(H) interim merger transaction and the Board's interpretation of it, any effort to establish a branch in Checotah would have been foreclosed by the statutory restrictions. Armstrongs first contend that under our statutory scheme, limitations on branching are not applicable to bank holding companies as § 502(H) is an exception to those provisions.[5] Armstrongs' notion that by silence, § 502(H) creates an exception for bank holding companies from branching restrictions of § 501.1(A) imposed by the Legislature, is unsustainable. Not surprisingly, they cite no authority in support of the argument. Branching is authorized only where expressly permitted and it is not permitted by § 502(H).

¶ 16 In an effort to make their point, Armstrongs urge us to find the meaning and significance of § 502(H) by viewing it

alone and out of context, but we decline the invitation. Subsection 502(H) does not exist in isolation. It is an integral part of the Bank Holding Company section and must be considered as part of that section and the Banking Act as a whole. The legislative intent behind a statute is to be ascertained from considering the whole act in light of the general purpose and objective, not just the individual provisions separately. *Smicklas v. Spitz*, 1992 OK 145, 846 P.2d 362, (Okl.1992); *First Comm. Bank of Blanchard v. Hodges*, 1995 OK 124, 907 P.2d 1047 (Okl.1995).

¶ 17 The Legislature has set forth the general purpose of the Bank Holding Company Section in § 502(A) and expressed the policy to be served as follows:

"Purpose. This section may be cited as the 'Bank Holding Company Section' and shall have for its purpose the maintenance of competitive services between banks by limiting the expansion of bank holding companies and similar organizations. It is deemed to be in the public interest that competition prevail in the banking system in the State of Oklahoma and to that end that the independence of unit banks be preserved. Further, it shall be the policy of the State of Oklahoma to oppose any attempt by any bank holding company to acquire control of any bank located in this state if such acquisition would result in a monopoly or in an attempt to monopolize the business of banking in this state."

¶ 18 Additionally, the Court notes that Armstrong's claim that restrictions of § 501.1(A) are not applicable to a bank holding company is shown to be erroneous by the provisions of § 502(G) and § 1111. Under § 502(G), a bank holding company may obtain a one-time only de novo charter for the purpose of merging with an existing bank subsidiary. The de novo chartered bank shall be the survivor of the merger which

---

5. Armstrong's claim is limited to statutory grounds. It is well established that a banking institution cannot avoid state branch banking restrictions merely because it is organized as a bank holding company if it is carrying out branch banking. See *Whitney Nat.Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 323 F.2d 290 (1963), rev'd on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); *Whitney National Bank in Jefferson Parish v. James*, 189 So.2d 430 (1st Civ.App.La., 1966); *First National Bank in Billings v. First Bank Stock Corp.*, 306 F.2d 937 (9th Cir.1962); *Commercial Nat.Bank of Little Rock v. Bd. Of Gov.*, 451 F.2d 86 (8th Cir.1971).

"shall have branching authority under subsections A and C of § 501.1 of this title."

¶ 19  Similarly, § 1111 provides that a state bank may merge with its parent bank holding company or the parent's nonbank subsidiaries, but § 1111(B)(2) provides that the merger "shall not result in any additional branch office of the [surviving] state bank, unless such additional branch is approved pursuant to the bank's de novo branching authority under § 501.1 of this title."

¶ 20  Armstrongs then argue that if any branching provisions are applicable to bank holding companies, they are §§ 501.1(C) and 501.1(E), under which, they submit, the merger transaction resulted in the "acquisition" of the branch so that its location in Checotah is not proscribed.

¶ 21  Section 501.1(E) provides:

"Authorized acquisitions.  Subject to the [deposit] limitations in subsection D of this section, a bank or savings association shall not be acquired by a bank and operated as a branch bank until the bank or savings association to be acquired has been in existence and continuous operation for a period of five (5) years.  Subject to the limitations in subsection D of this section, after January 1, 1997, a branch bank or savings association branch shall not be acquired by a bank and operated as a branch bank until the branch bank or savings association branch to be acquired has been in existence and continuous operation for a period of five (5) years.  The provisions of this subsection shall not prevent a bank from acquiring a bank to be operated as a branch bank whose charter was granted for the purpose of:

1.  Purchasing the assets and assuming the liabilities of a bank closed by the Commissioner or the Comptroller of the Currency due to insolvency or impairment of capital; or

2.  Acquiring or merging with an existing bank with an interim bank charter in accordance with the laws of this state or of the United States."

¶ 22  Relying heavily on the mere presence of the words "acquisition" and "interim bank" in § 501.1(C) and (E), Armstrongs and the Board submit that a "literal" reading of § 501.1(E) supports the Board's ruling as it creates an exception to the 5 year limitation on acquisitions.  They contend the provision can be read to mean that Armstrong Bank (a bank) may acquire Checotah (a bank) to be operated as a branch bank by acquisition under § 501.1 (C), because it was an interim bank which had not existed for 5 years.

▄▄  ¶ 23  We disagree.  This subsection cannot be read as advocated by Armstrong and Board.  It does not authorize the Board's Order either directly or indirectly.  The plain words of the statute show that it is concerned with a bank's acquisition of the *resulting bank* of a merger, not the constituent parts (the existing bank and the interim bank) of the merger.  As it pertains to these facts, if we assume that this proposed merger between the existing bank (Armstrong Bank) and the interim bank (Checotah Interim) is proper and the resulting bank (Armstrong ll) is granted a charter by the Board, then if any bank should wish to acquire Armstrong ll in the future and operate it as a branch bank, that acquisition transaction will come within the statute's exception and will not be subject to the requirement that Armstrong ll must have been in existence and continuous operation for the preceding 5 years.

¶ 24  Additionally, as Peoples Bank and the Association point out, under these circumstances, the interim bank, which exists only on paper, could not be "acquired"; it is not a "bank," it cannot conduct any business and it has no assets or liabilities.  Subsection 501.1(C) allows a bank to acquire a "bank", which is defined in § 102(3) as:

" 'Bank' means any bank authorized and chartered by the laws of this state to engage in the banking business, or any bank chartered by the office of the Comptroller of the Currency with its main office in this state; ."

¶ 25  Subsection 501.1(C) is obviously directed at the acquisition of existing banks and the merger of an interim bank is not the transaction contemplated by its terms.  An interim bank is prohibited by § 502.1(A) from conducting business until it has merged

with an existing bank. Only a "bank" can be "acquired." Section 102(1) provides:

" 'Acquisition' or 'acquire' means any act or action with respect to the ownership or control of a bank or the purchase of its assets and the assumption of its liabilities which would require the approval of the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, as amended, or the Office of Thrift Supervision under the Savings and Loan Holding Company Act, as amended; . ."

¶ 26   It is axiomatic that in statutory construction, the ascertainment of legislative intent is the primary consideration of courts. That legislative intent is to be first sought in the language of the statute and when the intent is plainly expressed so that the meaning of the statute is clear, there is no room for judicial construction and the statute must be followed without further inquiry. *Stemmons, Inc. v. Universal C.I.T. Credit Corp.* 1956 Ok 221, 301 P.2d 212 (1956). *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* 1980 OK 112, 614 P.2d 576 (1980). The language of a statute, when given its plain and ordinary meaning, is the yardstick for ascertainment of the Legislature's intent. *Tinker Inv. & Mortg. v. Midwest City,* 1994 OK 41, 873 P.2d 1029 (1994).

¶ 27   A straightforward reading of § 501.1(E) makes it clear that the legislative intent is to require that banks, savings associations, branch banks, and savings association branches must exist and be in continuous operation for 5 years before they may be acquired by a bank and operated as a branch. The § 501.1(E)(2) exception from that time requirement of a bank which was formed as a

result of a merger (or as a result of an acquisition or to take over a failed bank),[6] does not in any way support the Board's Order. The statute is not concerned with acquiring a constituent of the merger. Neither does it authorize the exception of any other requirement for a valid branch by acquisition—such as the necessity of acquiring an existing bank.

¶ 28   Peoples Bank and the Association are correct that the result of upholding Armstrongs' position would render § 501.1 meaningless and eliminate all legislative restrictions on branching. Bank holding companies would use the phantom bank merger procedure with impunity to create unlimited branches in any location.

¶ 29   In support of their claim of "acquisition" of the Checotah branch, under § 501.1(C) and (E), Armstrongs have created and relied on an argument in their brief regarding their proposed merger which is based on a false premise. They state that Armstrong Bank's Application to acquire the interim charter is specifically authorized by § 501.1(E) because:

"the natural consequence of the merger of the Armstrong Interim Bank and Armstrong Bank is that one of the banks must be the 'survivor' and the other bank will become a branch of the surviving bank. If Armstrong Bank is the survivor, then, according to the Code, it will have 'acquired' Armstrong Interim Bank. Section 501.1(C) permits a bank to acquire another bank and to convert the acquired bank into a branch. More importantly, unlike a *de novo* branch authorized under § 501.1(A)(1) ... there are no limitations on either the number of, or geographical

---

6.  See also subsection 502(F) which is the bank holding company equivalent of 501.(1)(E), with parallel provisions, as follows:

F.  Limitations on acquisitions. A bank, branch bank, savings association or savings association branch shall not be acquired by a bank holding company or a multibank holding company for a period of five (5) years after the bank, branch bank, savings association or savings association branch was granted its charter by the appropriate authorizing agency. However, the provisions of this subsection shall not

prevent a bank holding company or a multibank holding company from directly or indirectly acquiring a bank whose charter was granted for the purpose of:
1.  Purchasing the assets and assuming the liabilities of a bank closed by the Commissioner or the Comptroller of the Currency due to insolvency or impairment of capital; or
2.  Acquiring or merging an existing bank with an interim bank charter in accordance with the laws of this state or of the United States.

location for, acquired branches . . . . [under] § 501.1(C)(1) . . . "

¶ 30 Armstrongs misapprehend the point and effect of the merger which Armstrong Bancshares set out in the Merger Agreement and sought approval for in the Applications filed pursuant to § 502(H). The argument is fatally flawed. Once Checotah Interim Bank has merged "with and into" Armstrong Bank, there will be only the surviving bank. *Exchange Bank of Commerce v. Meadors,* 199 Okla. 10,199 Okla. 10, 184 P.2d 458 (1947); *Collinsville Nat.Bank v. Esau,* 74 Okla. 45, 176 P. 514 (1918). The interim bank will not be a branch of the surviving bank. The natural, and legal, consequence of the merger is that Checotah Interim Bank will be absorbed into Armstrong ll, and only Armstrong ll will remain. This bit of legal legerdemain by Armstrongs does not conceal the real facts of this matter.

¶ 31 The facts plainly show that this transaction which took the form of an application for an "acquisition" of a branch was merely a subterfuge for a prohibited de novo bank. The merger transaction of § 502(H) cannot be parlayed into a branch bank in Checotah. The surviving bank of this proposed merger is Armstrong Bank II of Vian and it may not be located anywhere other than Vian.

¶ 32 The Order of the Banking Board is unlawful as it contravenes our statutory branching scheme and it must be reversed. The Banking Board has no discretion to approve the establishment of a branch bank at a location prohibited by law. Peoples Bank and the Association have standing to bring this appeal as they are directly affected by the Order of the Board are they are "aggrieved" parties under § 207. The Board's Order is outside the law and therefore resulted in unlawful competition in violation of the legal rights of Appellants. See *Bank of theLakes v. First State Bank,* 1985 OK 81, 708 P.2d 1089 (Okl.1985).

¶ 33 The Order is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, OPALA, KAUGER and WATT, JJ., CONCUR.

ALMA WILSON, J., CONCURS IN PART, DISSENTS IN PART.

