2002 OK 68

**Bruce V. WINSTON and Rodney C. Ramsey, Plaintiffs/Appellants,**

v.

**STEWART & ELDER, P.C., an Oklahoma corporation; Stewart & Elder, a professional corporation; A.T. Elder, Jr.; Michael C. Stewart; and SE Properties, an Oklahoma partnership, Defendants/Appellees.**

No. 94,699.

Supreme Court of Oklahoma.

Sept. 17, 2002.

A. Daniel Woska of Woska & Hasbrook, P.L.L.C., of Oklahoma City, OK, for the plaintiffs/appellants.

B.J. Cooper and William C. McAlister of the Law Offices of B.J. Cooper, of Oklahoma City, OK, for the defendants/appellees.

**LAVENDER, J.**

¶ 1 Today's appeal requires the Court to assess (1) the trial court's grant of summary judgment to Stewart and Elder, individually, SE Properties, and Stewart & Elder, a professional corporation, in a suit to enforce stock-purchase and employment agreements [1] between (a) Bruce Winston and Rodney Ramsey [Winston/Ramsey or plaintiffs] and (b) Stewart & Elder, P.C. [law firm] and (2) the denial of summary judgment to plaintiffs. Upon review we hold the trial court correctly awarded summary judgment to SE Properties and Stewart & Elder, a professional corporation [Corporation]. Nonetheless, it was error to grant summary judgment to A.T. Elder, Jr. and Michael C. Stewart since unresolved questions of material fact remain as to them. We also hold that the provisions of 18 O.S.2001 § 1099 [2] do not render moot the plaintiffs' claims against law firm or Stewart and Elder, as individuals.

I

**FACTS AND PROCEDURAL HISTORY**

¶ 2 The history of today's case in the trial court is rather convoluted and stretches over an extended period of time. The cause began primarily as an action to enforce employment contracts and shareholder agreements. After the case's institution the trial court placed law firm in receivership. At the receivership's conclusion all sides—except law firm—sought summary judgment. The trial court entered summary judgment for Corporation, SE Properties and Stewart and Elder, as individuals, and denied the same to plaintiffs.

¶ 3 Plaintiffs were employees and shareholders of law firm. Winston resigned from law firm on July 22, 1994 and Ramsey terminated his employment relationship on November 12, 1994.

¶ 4 After plaintiffs' resignation defendants Stewart and Elder—majority shareholders of law firm—concluded that law firm was no longer a viable economic entity and themselves resigned from law firm on December 31, 1994. Stewart & Elder, P.C., was dissolved contemporaneous with their resignations. Stewart and Elder caused a new entity—Stewart & Elder, a professional corporation—to be incorporated on December 30, 1994 and went to work for it on January 1, 1995. Plaintiffs allege that Corporation operated from the same offices as law firm earlier had, continued to use the same letterhead stationery law firm had earlier used and used the same "book of business" developed by law firm.

¶ 5 On September 15, 1995 Winston and Ramsey brought suit against law firm alleging breach—occasioned by law firm not making required payments—under the Winston/Ramsey employment and shareholder agreements. Plaintiffs assert that upon termination their status changed from law-firm employee/shareholder to that of law-firm creditor. They allege that Stewart and Eld-

1. There are various employment and stock purchase agreements existing between plaintiffs and law firm. The pertinent ones for purposes of today's case are Winston's employment contract of January 1, 1989 and Ramsey's employment contract of January 1, 1990 and the amended stock purchase agreement, dated January 1, 1990 between plaintiffs [among others] and law firm.

2. Title 18 O.S.2001 § 1099 provides in pertinent part:

All corporations, whether they expire by their own limitation or are otherwise dissolved, nevertheless shall be continued, for the term of three (3) years from such expiration or dissolution or for such longer period as the district court shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to their shareholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. *With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, the action shall not abate by reason of the expiration or dissolution of the corporation. The corporation, solely for the purpose of such action, suit or proceeding, shall be continued as a body corporate beyond the three-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the district court.* [Emphasis added.]

er (as majority shareholders) engaged in self dealing in the operation of law firm. They also complain that Stewart and Elder engaged in preferential treatment of other law-firm creditors which caused them harm. In their petition plaintiffs seek an accounting from Corporation and law firm and recoupment of certain payments made by law firm to Stewart, Elder and SE Properties (law firm's landlord)—an entity owned by Stewart and Elder.

¶ 6 After plaintiffs' suit was filed, the district court appointed a receiver to marshal and sell law firm's assets. The receiver undertook and completed his responsibilities and was discharged by the trial court's November 22, 1996 order. The discharge order denominated Stewart, Elder, Winston and Ramsey as shareholders of law firm at the time of law firm's dissolution.

¶ 7 Law firm timely answered plaintiffs' petition *on October 18, 1995.* The remaining defendants did not *timely* file a response. Upon motion the trial court permitted their answers to be *filed on September 10, 1998.* In the interim Winston and Ramsey—*on July 13, 1998*—moved to amend their petition to assert additional theories of liability in support of their claim against Stewart and Elder, individually. In their proposed amendment they allege that not only are Stewart and Elder law firm's alter ego but also that they breached the fiduciary duties owed by majority shareholders to minority shareholders. The trial court denied plaintiffs' motion to amend on September 28, 1998. Plaintiffs and defendants [except law firm] then each sought summary judgment. The trial court entered summary judgment for Stewart and Elder, individually, SE Properties, and Corporation. In its April 18, 2000 order the trial court denied, *"as moot,"* plain-

tiffs motion for summary judgment against law firm.

¶ 8 Plaintiffs appealed. The Court of Civil Appeals reversed the trial court's entry of summary judgment and remanded the cause for trial. Defendants sought certiorari which was granted.

**II**

**THE STANDARD OF REVIEW**

¶ 9 Today the Court is called upon to review both a trial court's grant and denial of summary judgment. Such review is conducted *de novo.*[3] Although in its consideration of a motion for summary judgment the trial court considers factual matters, it ultimately must decide entitlement to judgment as a matter of law after it decides that it is clear there are no disputed material-fact[4] questions.[5] Oklahoma's extant jurisprudence is replete with numerous judicially-enunciated guidelines for assessment of the challenged summary judgment.

¶ 10 Summary process allows for the isolation and identification of non-triable fact issues.[6] The trial court cannot weigh the supporting documents or deposition testimony, but considers the same *only* to determine if there is a factual dispute.[7] If reasonable minds might reach different conclusions when viewing the evidentiary materials (even those which are undisputed), summary judgment is inappropriate.[8] Even when faced with an *uncontroverted* statement of facts, it is incumbent upon the trial court to insure the motion for summary judgment is meritorious.[9] All inferences and conclusions which may be drawn from the underlying facts must be taken in the light most favorable to

3. *Prudential Ins. Co. of America v. Glass,* 1998 OK 52 ¶ 2, 959 P.2d 586, 588.

4. A fact is material if proof of it would establish or refute an essential element of a cause of action or a defense. *Hadnot v. Shaw,* 1992 OK 21, 826 P.2d 978, 985.

5. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051, 1053.

6. *Dixon v. Bhuiyan,* 2000 OK 56 ¶ 7, 10 P.3d 888, 890.

7. *Post Oak Oil Co. v. Stack & Barnes,* 1996 OK 23, 913 P.2d 1311, 1313.

8. *Brown v. Okla. State Bank & Trust Co.,* 1993 OK 117, 860 P.2d 230, 233; *Perry v. Green,* 1970 OK 70, 468 P.2d 483, 488–89.

9. *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, 743 P.2d 682, 685, cert. denied Oct. 5, 1987 (approved for publication by the Supreme Court).

the party opposing summary judgment.[10] Lastly, before rendering summary judgment the trial court must rule out all theories of liability *fairly comprised* within the evidentiary materials before it.[11] Summary process is properly invoked only when it serves to eliminate a useless trial and should never be used to substitute a trial by affidavit for a trial by law.[12]

## III

### THE TRIAL COURT'S NOVEMBER 22, 1996 ORDER DISCHARGING LAW FIRM'S COURT–APPOINTED RECEIVER DOES NOT AFFECT LAW–FIRM'S CONTINUED EXISTENCE UNDER 18 O.S.2001 § 1099'S TERMS FOR PURPOSES OF PENDING LITIGATION

▆▆▆▆ ¶ 11 Defendants take the position that because plaintiffs did not appeal within thirty (30) days from entry of the trial court's November 22, 1996 order discharging law firm's court-appointed receiver, that order is final and unappealable. They next reason that since all payments required under the "now-unassailable" discharge-order's terms have been made, law firm is dissolved as a matter of law under § 1099's provisions. Plaintiffs argue that the discharge-order is interlocutory and remains appealable until such time as judgment is entered on plaintiffs' claim against law firm and Stewart and Elder, individually. Plaintiffs further assert that full execution of the discharge order does not affect law firm's continued existence under § 1099's terms so long as no judgment is entered on plaintiffs' claim in its pending suit.

▆▆▆▆ ¶ 12 Ascertainment of the legal effect which should be accorded the discharge-order in issue requires us to construe the following provisions of § 1099:

> With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, *the action shall not abate by reason of the expiration or dissolution of the corporation. The corporation,* solely for the purpose of such action, suit or proceeding, *shall be continued* as a body corporate beyond the three-year period and *until any judgments, orders or decrees therein shall be fully executed,* without the necessity for any special direction to that effect by the district court. [Emphasis added.]

In construing the above statutory provision the Court is mindful that if a statute's language is clear and unambiguous, its terms are to be given their reasonable and sensible meaning.[13] When *unambiguous* statutory language is a case's focus, the statute's employed lexicon constitutes the highest proof of legislative intent and further construction is not mandated.[14] Fundamental to all statutory construction is ascertainment of legislative intent and purpose as expressed in the act's language.[15] This process requires that "relevant provisions must be considered together, where possible, to give force and effect to each other."[16] If the statutory provision under review is part of the act, its meaning is ascertained by consideration of the *whole* act in light of its general purpose and objective.[17]

¶ 13 Application of the above statutory-construction standards commands the conclusion that § 1099's terms proscribe an action's abatement predicated upon a corporation's

10. *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, 894 P.2d 1077, 1079

11. *Hadnot, supra* note 4 at 987.

12. *Glass, supra* note 3 at 588–89; *Martin v. Chapel, Wilkinson, Riggs, and Abney et al.,* 1981 OK 134, 637 P.2d 81, 84.

13. *Sullins v. American Medical Response of Okla., Inc.,* 2001 OK 20, ¶ 17, 23 P.3d 259, 263.

14. *Sullins, supra* note 13, 2001 OK at ¶ 17, 23 P.3d at 263; *Community Bankers Ass'n. of Okla.*

*v. Okla. State Banking Bd.,* 1999 OK 24, ¶ 26, 979 P.2d 751, 757.

15. *Knight v. Ford,* 1994 OK 74, 877 P.2d 602, 604.

16. *Ledbetter v. Okla. Alcoholic Bev. Laws Enforcement Com'n.,* 1988 OK 117, 764 P.2d 172, 179.

17. *Haney v. State of Okla.,* 1993 OK 41, 850 P.2d 1087, 1089.

dissolution while litigation—filed, as here, within three years of the corporation's date of dissolution—is pending. The employed language is clear and unambiguous and can be read no other way. The language used in the section's last sentence evinces legislative intent that a corporation's complete dissolution be postponed until after judgment is entered in the pending litigation (filed within the statutorily-enunciated temporal window) and is fully executed.

¶14 The trial court's November 22, 1996 order discharging the court-appointed receiver was not a final order. It neither reached the merits of nor otherwise fully adjudicated the plaintiffs' theories of liability (as set forth in their petition) against law firm nor did it address plaintiffs' then-pending claims against SE Properties or corporation. It is interlocutory because it did not resolve all of the issues between all of the parties in today's case.[18] Hence, the discharge order was subject to revision at any time before judgment was entered in the case.

¶15 Today's construction of § 1099's language harmonizes with the legislative intent reflected in the law relative to receiverships—i.e., 12 O.S.2001 § 1551 et seq. The common law recognizes that a trial court's appointment of a receiver of a corporation's assets has no direct affect on pending actions against the defendant.[19] In fact these suits often may proceed to judgment without the receiver's participation so long as they do not interfere with the appointing-court's jurisdiction and/or the receiver's possession of the

debtor/defendant's res.[20] Ancillary receivership proceedings (such as the one here) do not necessarily address issues raised in the primary litigation which name as a defendant a corporation for which a receiver is later appointed if the issues in the underlying action are not specifically joined in the receivership proceedings.[21] The defendants would have the Court hold that law firm is dissolved (and legally incapable of being a defendant in an action other than the receivership) because the receiver has marshaled and sold the law firm's assets and the sale proceeds have been distributed. To follow this reasoning would in effect place the Court's imprimatur on the concept that once a dissolved corporation becomes judgment proof no action can be maintained against it. This we will not do.

¶16 The statutory language employed in § 1099's provisions evinces an opposite intent. Based upon the statutory language used the Legislature obviously intended that a corporation's dissolution would not effect abatement of suits pending at the time of or filed within three years of its dissolution date. To read the last sentence of § 1099 to effectuate an opposite conclusion when a corporation's assets are disposed of through a receivership and the court-appointed receiver is discharged would render the earlier § 1099 language meaningless.

¶17 The trial court in ruling on plaintiff's motion for summary judgment denied the same as *moot* but offered no analysis in its order why this is so. Based upon the record the Court assumes the trial court reasoned

18. *Patmon v. Block,* 1993 OK 53, 851 P.2d 539, 543.

19. Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers § 610 (3rd ed.1959).

20. *Id.*

21. Defendants reason in their appellate paperwork that even if the discharge order was not final when rendered, the same was made final and appealable by the trial court's April 18, 2000 order denying plaintiffs' motion for summary judgment. As earlier recognized by the Court's September 25, 2000 order the latter is correct. It was on April 18, 2000 that appeal-time as to the discharge order began. *Dotson v. Rainbolt,* 1992 OK 101, 835 P.2d 870.

Our reasoning about the discharge-order's appealability does not affront our conclusion that the receivership did not reach the merits of plaintiffs' claims against law firm and Stewart and Elder, as individuals, as raised in plaintiffs' petition. The trial court's April 18, 2000 order is accorded finality within the meaning of 12 O.S. 2001 § 953 not because it reached the merits of Winston/Ramsey's claims as asserted in their petition but rather because it *conclusively* determined the disputed question then before the trial court and left plaintiffs without any relief at the trial court's instance—i.e., denial of plaintiffs' motion for summary judgment as "moot" *precluded them from proceeding further in the case. Hammonds v. Osteopathic Hospital Founders Ass'n.,* 1996 OK 54, 917 P.2d 6, 7.

that law firm was dissolved by the ancillary receivership's conclusion—i.e., when the proceeds from the sale of law firm's assets were distributed under the discharge-order's provisions. The trial judge must have reasoned plaintiff's suit could not be maintained against a dissolved corporation under § 1099's provisions once orders emanating from the receivership were fully executed. The receivership's conclusion did not render law firm dissolved under § 1099 terms; it remained viable for purposes of the then pending litigation against it. Hence, the trial court's order denying plaintiffs' motion for summary judgment *because of mootness* is reversed. Nonetheless, the trial court could have properly denied summary judgment to plaintiffs because there are unresolved questions of material facts relative to: (1) the majority shareholders' (Stewart and Elder) treatment of the minority shareholders (Winston/Ramsey), (2) Stewart and Elder's relationship with law firm and whether they were its alter ego, and (3) law firm's breach of applicable employment contracts and shareholder agreements. Denial of summary judgment for the latter reason does not dispose of plaintiffs' claim against law firm. Winston/Ramsey's claim against law firm remains pending and prevents the complete dissolution of the corporation under § 1099's terms.

## IV

### THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT TO SE PROPERTIES AND STEWART & ELDER, A PROFESSIONAL CORPORATION [CORPORATION] WAS PROPER AND IS SUSTAINED.

 ¶ 18 The record reflects confusion concerning the plaintiffs' status *vis a vis* law firm after their termination dates. This confusion is apparent (a) from the face of the plaintiffs' petition and the receiver's discharge order and (b) in the way the plaintiffs and defendants conducted themselves during the interim between severance of the plaintiffs' employment relationship with law firm and law firm's dissolution date.

¶ 19 Winston/Ramsey in their petition assert claims for breach of contract occurring after their employment relationship with law firm ended. Plaintiffs also challenge certain acts of law firm relative to SE Properties and Corporation happening after they left law firm. The trial court's order discharging the receiver treats plaintiffs as though they were still law-firm shareholders at the time of its dissolution. Plaintiffs in their brief opposing summary judgment for defendants and also in their brief in support of their motion for summary judgment assert they became law-firm creditors upon their termination. The Court recognizes that subsumed within plaintiffs' assertion that they are law-firm creditors is an appeal from that provision of the trial court's order (discharging the receiver) which finds they were law-firm shareholders on the date of its dissolution.

¶ 20 The plaintiffs' respective termination dates are determinative of their legal status relative to law firm. Under paragraph 2.1 of the respective shareholder agreements plaintiffs were contractually required *to surrender* their law-firm shares upon termination at a price determined in accordance with shareholder agreement paragraph 3.2's terms. Assuming surrender occurred as contractually required, Winston was neither an employee of nor a shareholder in law firm after July 22, 1994 and the same is true of Ramsey after November 12, 1994. After their severance dates Winston and Ramsey's relationships with law firm are best characterized as that of general creditor to debtor. After their resignation from law firm and the surrender of their stock they could neither hold nor claim entitlement to those shareholder rights which are associated with corporate ownership. Their status as law-firm creditor does not entitle them to assert derivative actions on law firm's behalf, i.e., to seek recoupment of payments made by law firm to other creditors.[22] Claims for alleged damage to law firm occasioned by Stewart and Elder's acts occurring after the plaintiffs' termination dates and surrender of shares belong solely to law firm. Lastly, the Court notes that the transactions between law firm and Corporation of which plaintiffs complain and

---

**22.** *Cooke v. Tankersley,* 1948 OK 23, 189 P.2d 417, 419.

ask Corporation to account transpired *after* Winston/Ramsey terminated their status as law-firm shareholders. *Sans* standing to assert a claim on law firm's behalf against other entities, the only remaining basis for the sought-after accounting from Corporation would be actual ownership interests in Corporation. There is no indicia of such ownership in the record. Hence, there is no basis in law upon which an accounting can be ordered of Corporation under the undisputed facts reflected in the record.

¶ 21 Plaintiffs' recoupment claim (for payments made by law firm after Winston/Ramsey's severance[23]) against SE Properties is likewise a corporate claim belonging to law firm which plaintiffs—as law-firm creditors—cannot assert. There is no allegation in plaintiffs' petition that their action was commenced for the benefit of law firm or its shareholders. The trial court's grants of summary judgment to SE Properties and Corporation are correct and, hence, are sustained.

### V

### THE TRIAL COURT ERRED IN NOT PERMITTING PLAINTIFFS' AMENDMENT TO THEIR PETITION TO ASSERT ADDITIONAL THEORIES OF LIABILITY AGAINST DEFENDANTS—STEWART AND ELDER.

¶ 22 Plaintiffs moved to amend their petition to assert new theories of liability [alter ego and breach of fiduciary duty] in support of their claim against Stewart and Elder, individually, *on July 13, 1998.* [Their original petition was filed on September 15, 1995.] As of July 13, 1998 no responsive pleading, i.e., answer, to Winston/Ramsey's original petition had been filed by Stewart and Elder, who sought leave and were allowed to file their answers out of time on *September 10, 1998.*[24] The trial judge denied plaintiffs' motion to amend.[25] The following analysis of the trial court's denial of plaintiffs' motion to amend its petition accords with the Court of Civil Appeals' earlier decision addressing the same issue.

¶ 23 The trial court's procedural rulings require the Court to construe the following provisions of 12 O.S.2001 § 2015(A):

> "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires...." [26]

Oklahoma Statutes, Title 12, § 2015(A) mirrors Fed.RulesCiv.Proc. Rule 15(A), 28 U.S.C.A. When in its assessment of Oklahoma's procedural regime the Court addresses federally-evolved concepts, we may look to the federal courts for guidance in the interpretation and application of the rule in issue.[27] Hence, federal extant jurisprudence and treatises on the pertinent federal procedure are enlightening in discerning the application which should be accorded § 2015(A)'s language set forth above.

23. The record indicates that payments made to SE Properties were rental payments for the space occupied by law firm. There is no indication in the materials submitted that the monies paid to SE Properties were not due and owing or were otherwise fraudulent. Plaintiffs' arguments regarding SE Properties more closely relate to their allegation that Stewart and Elder were the alter ego of law firm or at a minimum were conducting law firm's business to benefit themselves as opposed to other law-firm creditors.

24. The only defendant who had answered plaintiffs' complaint was law firm.

25. In later ruling on plaintiffs' motion to reconsider the denial of amendment, the trial court noted that allowing amendment would "unduly delay the final resolution of this case which is over three years old."

26. [*See* 12 O.S.2001 § 2007 for identification of what constitutes a pleading.]

27. *See* 12 O.S.2001, Ch. 39 Oklahoma Pleading Code, *Intro. Com. Comment* ("Application of the Oklahoma Pleading Code in Oklahoma state courts will be facilitated by reference to the appellate decisions from federal and state courts construing the Federal Rules.... Where the text of the Federal Rules has been adopted in the Oklahoma Pleading Code, the construction placed on it by federal and state courts should be presumed to have been adopted as well. *Laubach v. Morgan*, 1978 OK 5, 588 P.2d 1071, 1073").

¶ 24 Under the federal Rule 15(A) it is axiomatic that a complaint [the federal equivalent of Oklahoma's petition] may be amended *by right* at any time before an answer is served.[28] Allowing a party the right to amend by right without the court's permission under the first sentence of § 2015 is consistent with the later language of Section 2015(A) which circumscribes a party's right to amend "only" with leave of court after a responsive pleading has been filed. It was error under § 2015's provisions for the trial court to deny Winston/Ramsey's amendment of their petition to assert new theories of liability against Stewart and Elder, individually, when defendants had not yet responded to the original petition. The error is even more pronounced here when no trial date had been set as of the time the trial court ruled on the proposed amendment, the plaintiffs' sought-after amendment did not require the joinder of additional parties, and the original petition gave Stewart and Elder notice of the basic facts which plaintiffs were asserting in support of their additional theories of liability being asserted.[29]

## VI

## SUMMARY

¶ 25 Today the Court is called upon to assess the use of summary process to resolve a case which had been on the trial court's docket for almost five years. In our assessment we are extremely mindful that summary adjudication not be invoked except where it serves to eliminate a *useless* trial. A trial on the merits is always preferred to a trial by affidavit except where all questions of material facts have been resolved.

¶ 26 The defendants' [Stewart and Elder] conduct as majority shareholders of law firm presents questions of fact which remain unresolved by the conclusion of the ancillary receivership. Section 1099's language does not mandate the abatement of pending litigation—such as that here—upon the conclusion of an ancillary receivership unless the claim in issue [in the pending action] is specifically joined as an issue addressed by the receivership proceedings. Where, as here, the unresolved litigation is brought within three years of the corporation's dissolution date, the corporation's complete dissolution is not a *fait accompli* until that litigation is finished and any judgment entered in the same is fully executed.

¶ 27 Upon certiorari earlier granted,

**THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT IS REVERSED IN PART AND AFFIRMED IN PART; AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 28 HARGRAVE, C.J., HODGES, OPALA, KAUGER, SUMMERS and WINCHESTER, JJ., concur.

¶ 29 BOUDREAU, J., concurs in result.

¶ 30 WATT, V.C.J., disqualified.

---

28. *See* Wright and Miller, 6 Fed. Prac. & Proc. Civ.2d § 1483. *See also Washington v. N.Y.City Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir.1983); *City Bank v. Glenn Construction Corp.*, 68 F.R.D. 511, 513 (U.S. District Court, D. Hawaii 1975). Lastly, *see DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987), where the court held that delay, by itself, is insufficient to justify denial of leave to amend.

29. The Court is cognizant of plaintiffs' deposition testimony about whether they would assert additional theories of liability seeking to impose individual liability on Stewart and Elder. Nonetheless, defendants have failed to show they would be unduly prejudiced, even though it is possible they may have to conduct additional discovery.