Dear Representative McAffrey:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. The Oklahoma Highway Advertising Control Act does not allow billboards visible from the interstate highways to be erected within one thousand (1,000) feet of other such billboards. Does this prohibition apply only to billboards on the same side of the highway?
 2. Pursuant to the provisions of the Oklahoma Highway Advertising Control Act, is a billboard that is within six hundred and sixty (660) feet of an interstate, within an urban area, and visible from (though not intended to be read from) the interstate, subject to regulation by the Oklahoma Department of Transportation ("ODOT")?
 A. BACKGROUND
1. HISTORY OF THE FEDERAL ACT
In 1965, Congress passed the Federal Highway Beautification Act ("Federal Act"), which required mandatory compliance from all states and allowed the federal government to cut a state's federal highway funding by 10% if it failed to comply with its provisions. 23 U.S.C. § 131(b) (West, Westlaw through Mar. 2009). The Federal Act requires that the states provide "effective control" of outdoor advertising signs, displays and devices in areas adjacent to the Interstate System and the primary system, [1] which are within a specified distance of the nearest edge of the right-of-way and visible from the main traveled way of the system. The Federal Act further provides: *Page 2 
 In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays, and devices whose size, lighting and spacing, consistent with customary use is to be determined by agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of State law, or in unzoned commercial or industrial areas as may be determined by agreement between the several States and the Secretary.
Id. § 131(d).
2. OKLAHOMA'S RESPONSE: THE HIGHWAY ADVERTISING CONTROL ACT
Specific control of highway advertising became the law and policy in Oklahoma in 1968, when the Legislature, in response to these federal mandates, enacted the Highway Advertising Control Act of 1968, ("Oklahoma Act"), codified at 69 O.S. 2001 Supp. 2008, §§ 1271 — 1288.[2] The stated *Page 3 
purposes of the Oklahoma Act are the promotion of "public safety, health, welfare, convenience and enjoyment of public travel" and the "preserv[ation] and enhance[ment of] the scenic beauty of lands bordering public highways." 69 O.S. 2001, § 1271[69-1271]. The Legislature determined that it was "in the public interest to control the size, number, spacing, lighting, type and location" of outdoor advertising devices in "control areas."[3] Id.
The Oklahoma Act expressly authorizes the Oklahoma Department of Transportation ("ODOT") to promulgate and enforce necessary rules and regulations to control outdoor advertising in order to qualify Oklahoma for federal-aid highway funds, and to ensure compliance with the purpose and intent of the Federal Act and regulations.
 The Oklahoma Department of Transportation shall have the authority to implement and enforce this act, and may prohibit outdoor advertising devices in the control areas, and may regulate and permit certain outdoor advertising structures and devices in the control areas, within the limitations of this act and according to the standards and definitions set forth in this act. *Page 4 
69 O.S. 2001, § 1271[69-1271].
 B. QUESTIONS 1. WHILE THE HIGHWAY ADVERTISING CONTROL ACT DOES NOT ALLOW BILLBOARDSVISIBLE FROM THE INTERSTATE HIGHWAYS TO BE ERECTED WITHIN ONE THOUSAND(1,000) FEET OF ANOTHER SUCH BILLBOARD, DOES THIS PROHIBITION APPLY ONLYTO BILLBOARDS LOCATED ON THE SAME SIDE OF THE HIGHWAY?
Your question requires an interpretation and construction of the 1000-foot spacing requirement found in Section 1275 of the Oklahoma Act. This section of the Oklahoma Act provides the standards (specifications, requirements and limitations) pertaining to size, spacing, lighting, etc. for signs that may be erected in a "business area."[4] For purposes of this question, we are concerned with the second sentence of Section 1275(c)(3), which requires that signs visible from interstate andfreeway primary facilities have 1000 feet of space between them. You ask whether this 1000-foot limitation applies only to signs on the same side of the highway.
"The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." In re City of Durant v. Cicio, 50 P.3d 218, 221
(Okla. 2002). The first two sentences of Section 1275(c)(3) provide spacing limitations for two different categories of roadways. The first sentence, which applies to signs visible from a nonfreeway primaryhighway, clearly differentiates between signs on the same and on opposite sides of the roadway for spacing purposes. *Page 5 
 Signs visible from a nonfreeway primary highway shall not be erected within the limits of an incorporated municipality less than one hundred (100) feet on the opposite side of the highway and three hundred (300) feet on the same side of the highway, and outside the limits of an incorporated municipality less than three hundred (300) feet, from another such sign, other than signs described in subsections (a), (b) and (c) of Section 1274 of this title. . . .
69 O.S. 2001, § 1275[69-1275](c)(3) (emphasis added).
In contrast, the second sentence, which applies to interstate andfreeway primary facilities, contains no such qualifying language to restrict the prohibition to one side of the highway.
 Signs visible from interstate and freeway primaryfacilities shall not be erected less than one thousand(1,000) feet from another such sign, other than signs described in subsections (a), (b) and (c) of Section 1274 of this title.
Id. (emphasis added).[5]
"We presume the legislature intended what it expressed in a statute and the plain language of the statute will be followed without further inquiry." Humphrey v. Denney, 757 P.2d 833, 835 (Okla. 1988). Although a plain reading of Section 1275(c)(3) shows that the spacing requirement for the two categories of roadways is clear and unambiguous, a look at the 2001 amendments to this section further aids in the analysis. *Page 6 
In amending Section 1275(c)(3) in 2001, the Legislature made two significant changes to the spacing requirements contained in that subsection, thereby impacting both nonfreeway primary highways andinterstate and freeway primary facilities. In the first sentence, which applies to nonfreeway primary highways, the Legislature added a line of text to provide a definitive distinction in the minimum required distance between signs on the same side (100 feet) and those on opposite sides of the roadway (300 feet). 2001 Okla. Sess. Laws ch. 179, § 1(c)(3).[6] In the second sentence, which applies to signs visible from the interstateand freeway primary facilities, the Legislature modified the minimum distance requirement from 500 feet of space between signs to 1000 feet, yet it chose not to include a provision similar to the one it used in the first sentence under which the spacing requirement would depend on which side of the roadway a sign was to be placed. Id.[7]
Thus, we note that in amending the spacing requirements for the first category of roadways, the nonfreeway primary highways, the Legislature clearly differentiated between signs on the same side and on the opposite side of the roadway. We also note that the Legislature chosenot to differentiate in a similar manner when it amended the spacing requirements for the second category of roads, the interstate andfreeway primary facilities about which you inquire.
The plain language of the 2001 amendments to Section 1275(c)(3) demonstrates clear legislative intent to treat the spacing requirements for the two categories of roads differently. By choosing not to insert the qualifying language in the second sentence of Section 1275(c)(3), which applies to interstate and freeway primary facilities, theLegislature chose not to restrict the spacing *Page 7 
requirement to one side of the highway or the other for this category of roadway. Therefore, the spacing requirement that applies to interstateand freeway primary facilities prohibits any sign within 1000 feet of another sign, regardless of whether the sign is on the same or opposite side of the roadway. "The language of a statute, when given its plain and ordinary meaning, is the yardstick for ascertainment of the Legislature's intent." Cmty. Bankers Ass'n v. Okla. State Banking Bd., 979 P.2d 751, 758
(Okla. 1999). "Legislative intent cannot be determined from extrinsicaids when the statute speaks plainly and the statute's meaning must beaccepted." In re Protest of the 1990-1991 Budget v. Metro AreaVocational-Technical Sch. Dist. No. 22, 848 P.2d 30, 33 (Okla.Civ.App.1992).
We further note that ODOT has not promulgated administrative rules to conform to the 2001 amendments to Section 1275(c)(3), in which the Legislature enacted different spacing standards for the two categories of roadways. Accordingly, existing agency regulations that were promulgated prior to the legislation at issue are of no aid in interpreting Section 1275(c)(3).[8] The plain language of the the statute controls. "Whereneither ambiguity or doubt exists, even the rule that weight is to begiven to an administrative construction is inapplicable — i.e.administrative construction cannot override plain statutory language."Neer v. State ex rel. Okla. Tax Comm'n, 982 P.2d 1071, 1078 (Okla. 1999).
Finally, the practical effect of interpreting the 1000-foot spacing limitation in Section 1275(c)(3) as applying only to signs on the same side of the road would be allowing additional "clutter" along the interstate. Such a result is contrary to the expressed intent of the Oklahoma Act (to promote the safety and recreational value of public travel and to preserve natural beauty). 69 O.S. 2001, § 1271[69-1271]. Based upon a plain reading of the Oklahoma Act in conjunction with the expressions of legislative intent discussed herein, the 1000-foot spacing limitation applies to all signs of the size and type covered by the second sentence of Section 1275(c)(3), regardless of the side of the highway.
 2. PURSUANT TO THE PROVISIONS OF THE HIGHWAY ADVERTISING CONTROL ACT, IS A BILLBOARD THAT IS WITHIN 660 FEET OF AN INTERSTATE, WITHIN AN URBAN AREA AND VISIBLE FROM (THOUGH NOT INTENDED TO BE READ FROM) THE INTERSTATE, EXEMPT FROM REGULATION BY ODOT?
This second question presumes, as we have already discussed, that ODOT is statutorily authorized and charged to implement and enforce the provisions of the Oklahoma Act through permits and *Page 8 
regulations. 69 O.S. 2001, § 1271[69-1271]. To answer this question we must first look to the language of the relevant statute.
 The provisions of this act apply only to the erection and maintenance of outdoor advertising signs, displays and devices located in adjacent areas within six hundred sixty (660) feet from the nearest edge of the right-of-way and which are visible from the main traveled way and those which are located in controlled areas beyond six hundred sixty (660) feet from the nearest edge of the right-of-way, visible from the main traveled way and erected with the purpose of being read from the main traveled way.
69 O.S. 2001, § 1272[69-1272].
This provision is unambiguous. A plain language reading of Section 1272, titled "Application of Act," leads to the simple conclusion thatany outdoor advertising sign, [9] display or device within 660 feet, ifvisible from the main traveled way, [10] is subject to ODOT regulation, especially given the broad statutory definition of "visible."[11] Further, it is only those signs beyond 660 feet from the edge and located outside an urban area, [12] for which regulation is dependent upon whether the sign was "erected with the purpose of being read from the main traveled way." 69 O.S. 2001, § 1272[69-1272]. Because your question contemplates a billboard or sign that is within 660 feet of an interstate highway, the sign need only be visible to make it subject to ODOT regulation. ODOT promulgated a rule governing the issuance of permits, as follows: *Page 9 
 Permits for outdoor advertising signs, displays, and devices
 (a) All signs, except for signs considered exempt, (see 730:35-5-14) that are adjacent to or located within six hundred sixty (660) feet of the right-of-way, and visible from the mai[n] traveled way of an Interstate or Federal-aid Primary highway in the state, are required to be registered and permitted by the Department.
OAC 730:35-5-6 (2000). ODOT's permit regulation, therefore, parallels the Oklahoma Act. Both define "visible" as "capable of being seen without visual aid by a person of normal visual acuity." 69 O.S. 2001, § 1273[69-1273](q). For signs within 660 feet, there is no mention in either the ODOT rules or the Oklahoma Act of whether the sign has been "erected with the purpose of being read from the main[-]traveled way," and such a determination or criterion is, therefore, not relevant. 69 O.S. 2001, § 1272[69-1272].
ODOT is directed by a federal regulation, 23 C.F.R. § 750.705(g),to "[e]stablish criteria for determining which signs have been erectedwith the purpose of their message being read from the main-traveled wayof an Interstate or primary highway." Id. (emphasis added). The federal regulation reads in pertinent part as follows:
 In order to provide effective control of outdoor advertising, the State must:
 . . . .
 (g) Establish criteria for determining which signs have been erected with the purpose of their message being read from the main-traveled way of an Interstate or primary highway, except where State law makes such criteria unnecessary. Where a sign erected with the purpose of its message being read from two or more highways, one or more of which is a controlled highway, the more stringent of applicable control requirements will apply;
 (h) Develop laws, regulations, and procedures to accomplish the requirements of this subpart[.]
Id.
While the federal regulation requires that states establish criteria for determining which signs have been erected with the purpose of their message being read from the main-traveled way as a means of providing "effective control" of highway advertising, there is no evidence that ODOT has established such criteria. Nor has ODOT interpreted the Oklahoma Act through the promulgation of any administrative rule that addresses the issue of "readability" for signs within 660 feet of the main-traveled way. And as previously stated, the statute is clear and unambiguous on the point. *Page 10 
If the Legislature had intended to restrict the regulation of billboards within 660 feet of the main traveled way of the Interstate to those signs designed to be read from the Interstate, it would have included the appropriate qualifying language, as it did for signs outside the urban areas and beyond 660 feet (for which regulation is dependent upon whether the sign was "erected with the purpose of being read from the main traveled way." 69 O.S. 2001, § 1272[69-1272]. "[T]he Legislature is presumed to have expressed its intent in the statute, intended what it expressed and nothing more. Okla. Alcoholic Beverage Control Bd. v.Milam, 393 P.2d 823, 826 (Okla. 1964). In Section 1272 the Legislature expressed no such intent. Therefore, billboards that are within 660 feet of an interstate within an urban area and visible from, even though not intended to be read from, the interstate are subject to ODOT's regulation.
Further, the contrary conclusion, that ODOT's permit regulation authority extends only to those signs constructed to be read from the interstate highway, leads to the potential for even more highway "clutter" and visual distraction than the plain reading of the statute would permit. Any sign within 660 feet of the interstate, whether or not positioned so as to be read from the main traveled way, has the potential to distract drivers and to lessen the aesthetic value of the roadway. Such a result is at odds with the expressed intent and joint purposes of ensuring the preservation of natural beauty and promoting the safety and recreational value of the nation's highways. 69 O.S. 2001, § 1271[69-1271]. "The subject matter and purpose of a statute are material to ascertaining the meaning of a word or phrase used and that language should be construed to be harmonious with the purpose of the act, rather than in a way which would defeat it." Bishop v. Takata Corp., 12 P.3d 459, 466 n. 30 (Okla. 2000).
 It is, therefore, the official Opinion of the Attorney General that:
 1. The Highway Advertising Control Act does not allow billboards visible from the interstate highways to be erected within one thousand feet of another such billboard, regardless of whether the billboards are on the same or opposite side of the highway. 69 O.S. 2001, § 1275[69-1275](c)(3).
 2. Pursuant to the provisions of the Highway Advertising Control Act, a billboard within an urban area that is within 660 feet of an interstate highway and visible from the interstate highway is subject to regulation by the Oklahoma Department of Transportation, regardless of whether it was intended to be read from such highway. 69 O.S. 2001, § 1272[ 69-1272].
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
REGINA SWITZER ASSISTANT ATTORNEY GENERAL
[1] Subsection 131(t) of Title 23 of the United States Code defines "primary system" for purposes of outdoor advertising control. "[T]he terms `primary system' and `Federal-aid primary system' mean the Federal-aid primary system in existence on June 1, 1991, and any highway which is not on such system but which is on the National Highway System." Id.; see also, U.S. Dep't of Transp., Fed. Highway Admin., A History and Overview of the Federal Outdoor Advertising Control Program, http://www.fhwa.dot.gov/realestate/oacprog.htm (last visited Mar. 14, 2009).
[2] The State of Oklahoma, acting through its Director of Highways, executed an Agreement on April 14, 1972, with the U.S. Secretary of Transportation in compliance with Title I of the Highway Beautification Act of 1965, thereby agreeing to implement and carry out the provisions of Section 131 of Title 23 of the U.S. Code and its national policy in order to remain eligible to receive the full amount of all federal-aid highway funds to subsequently be apportioned to Oklahoma. See Agreement For Carrying out National Policy Relative to Control of Outdoor Advertising in Areas Adjacent to the National System of Interstate and Defense Highways and the Federal Aid Primary System, Apr. 14, 1972 (on file with the author).
[3] "Adjacent area" or "control area" is defined in the Oklahoma Act as:
 the area which is adjacent to and within six hundred sixty (660) feet of the nearest edge of the right-of-way on any interstate or primary highway within urban areas, which six hundred sixty-foot distance shall be measured horizontally along a line perpendicular to, or ninety (90) degrees to, the centerline of the highway. Outside of urban areas, adjacent area or control area means the area which is visible from the main traveled way on any interstate or primary highway.
69 O.S. 2001, § 1273[69-1273](m).
[4] "Business area" is defined by the Oklahoma Act to mean any part of a control area which is:
 (1) Within six hundred sixty (660) feet of the nearest edge of the right-of-way and zoned for business, industrial or commercial activities under the authority of any state zoning law, or city or county zoning ordinance of this state; or
 (2) Not so zoned, but which constitutes an unzoned commercial or industrial area as herein defined.
Id. § 1273(n).
[5] In the above quote, "subsections (a), (b) and (c) of Section 1274" refer to those types of signs in the control areas that are exempt from certain regulations: (a) informational and other official signs, (b) on-premises activities signs advertising activities conducted on the property on which they are located, and (c) on-premises sale or lease signs advertising the sale or lease of the property upon which they are located.
[6] The amendment added the underscored text as follows:
 Signs visible from a nonfreeway primary highway shall not be erected within the limits of an incorporated municipality less than one hundred (100) feet on the opposite side of the highway and three hundred (300) feet on the same side of the highway, and outside the limits of an incorporated municipality. . . .
2001 Okla. Sess. Laws ch. 179, § 1(c)(3).
[7] The section also contained a provision that the new heightened spacing requirements would be applied prospectively, permitting signs that were in compliance prior to the Oklahoma Act to retain legal status, if otherwise compliant. See id.
[8] Existing ODOT rule OAC 750:35-5-12(b)(1)(A) was promulgated and became effective in May, 2000; it addresses spacing for Interstates and Controlled Access Primary Highways and prohibits signs less than 500 feet apart "on the same side of the highway." "The Legislature is deemed to have adopted an administrative construction when it amends or re-enacts a relevant statute without overriding the administratively-imposed construction." Walker v. Group Health Serv., Inc., 37 P.3d 749, 760
(Okla. 2001). Here, the Legislature specifically rejected anadministrative construction when it amended a relevant statute.
[9]
 "Sign," "outdoor advertising" or "outdoor advertising device" means any outdoor sign, display, device, notice, figure, painting, drawing, message, placard, poster, billboard or other thing which is designed, intended or used to advertise or inform, but shall not include surface markers showing the location or route of underground utility facilities or pipelines or public telephone coin stations installed for emergency use.
69 O.S. 2001, § 1273[69-1273](a).
[10]
 "Main traveled way" means the traveled way of a highway on which through traffic is carried. In the case of a divided highway, the traveled way of each of the separated roadways for traffic in opposite directions is the main traveled way.
Id. § 1273(b).
[11] Oklahoma's Act defines "visible" as "capable of being seen without visual aid by a person of normal visual acuity." 69 O.S. 2001, § 1273[69-1273](q). ODOT's administrative rules define visible as "capable of being seen without visual aid by a person of normal visual acuity." OAC730:35-5-3 (2000). The federal rules define it as "capable of being seen, whether or not readable, without visual aid by a person of normal visual acuity." 23 C.F.R. § 750.703(n) (2009), WL 23 CFR § 750.703.
[12] Given the definition of "control area," 69 O.S. 2001, § 1273[69-1273](m), a control area beyond 660 feet only applies outside urban areas. See also 69 O.S. 2001, § 1271[69-1271]. *Page 1